## McCormick and Others *v.* Humphrey.

MILITARY ARRESTS.—RIGHT OF REMOVAL TO UNITED STATES COURTS.—Suit for assault and battery and false imprisonment. The defendants appeared to the action, and filed a petition for the removal of the cause to the *United States* Circuit Court, under section 5 of the act of Congress of *March* 3, 1863. The petition alleged that the plaintiff was a member of a military organization hostile to the *United States*, known as the *Sons of Liberty*, the object of which was to aid the rebels in arms in the southern States to overthrow the Government; that the general commanding, by appointment of the President, the military forces of the *United States* in the State of *Indiana*, issued an order for the arrest of the plaintiff, and delivered the same to a subordinate officer to be executed; that the officer charged with the execution of said order was directed to call upon the general commanding the militia forces of the State of *Indiana* for assistance in executing the same, who, in pursuance of such request, ordered the defendants, who were members of said militia, to aid in the execution of said order, which they did, and that this was the arrest and imprisonment complained of, &c.

*Held*, that the petition entitled the defendants to have the case removed, under the law.

*Held*, also, that the case made by the petition was within the judicial power of the *United States*.

*Held*, also, that Congress may provide for the transfer, before judgment, of cases which fall within the jurisdiction of the courts of the *United States*.

APPEAL from the *Sullivan* Circuit Court.

RAY, C. J.—The appellee, *Andrew Humphrey*, filed his complaint in the Circuit Court of *Sullivan* county, on the 1st day of *February*, 1866, against *Samuel McCormick* and ten others, for assault and battery and false imprisonment. The complaint contains four paragraphs, charging the assault and battery and false imprisonment in different forms, but for the purposes of this appeal it is not necessary to note their points of difference.

The allegations of the complaint are, in substance, as follows: That the defendants, at, &c., in *Greene* county, on the 7th of *October*, 1864, made an assault upon the plaintiff, and arrested and carried him by force to *Linton*, *Greene* county, thence to *Sullivan*, and thence to *Indianapolis*, where he was

confined and imprisoned in the Government Building for a period of three months; that he was removed from thence to a dungeon in the *Soldier's Home,* where he was confined for a further period of three months. The arrest and imprisonment are alleged to have been without probable cause, and the expenses incurred in procuring his release are particularly enumerated.

It further appears by the record that on the 8th judicial day of the *February* term, 1866, of the *Sullivan* Circuit Court, the defendants, by their attorneys, first appeared to the action, and moved the court, upon a petition then filed, which was duly verified by affidavit, "to remove the cause to the *United States* Circuit Court for the District of *Indiana*," which motion the court overruled. The defendants excepted to this ruling.

The following are the allegations of the petition: That on the 7th of *October,* 1864, the plaintiff was an active member of a secret political organization, called the "*Sons of Liberty;*" that said organization contained a membership of seventy thousand in *Indiana* alone; that the objects of the organization were to raise and equip an army, and then by a general uprising to seize the *United States* arsenals in this and the adjoining states, release the rebel prisoners confined in the military prisons, and then to co-operate with the rebel army for the overthrow of the government of the *United States;* that the objects of said organization were unlawful and treasonable; that the plaintiff, being fully advised of the treasonable character of said organization, had accepted the appointment of brigadier general in the military part of said organization, and had assumed and exercised the powers and duties conferred and imposed upon him by the rules of said order, as such brigadier general; that at the time aforesaid, Brevet Major General *Alvin P. Hovey* was, by the direction and appointment of the President of the *United States,* in command of the district of *Indiana;* that on the 5th of *October,* 1864, the said *Hovey* issued an order to Captain *John W. Day,* 21st *Indiana* vol-

unteers, commanding him to proceed to *Greene* county, and to arrest the said *Andrew Humphrey*, with the assistance of a force to be turned over to him by Major General *James Hughes*, who was then commanding the *Indiana* militia in that part of the State; that by said order the said *Day* was further directed to bring the said *Humphrey* a prisoner to the head quarters of the said *Hovey*, at *Indianapolis*, and for the force necessary to execute said order, the said *Day* was required to call upon General *Hughes;* that at the time aforesaid, the defendants were all members of a military company, organized and mustered into service under the laws of *Indiana;* that said defendant *Samuel McCormick* was captain of said company, which belonged to the command of said *Hughes;* that on the 6th of *October*, 1864, the said *McCormick* received from General *Hughes* an order to select twenty-five men from his company, and report with them at once to the said Captain *Day*, for duty; that in pursuance of said order, the said *McCormick*, with the other defendants, who were members of his said company, did report to the said *Day*, who, being the senior officer, and designated in said orders as the commander of said expedition, did then assume the command thereof, and did, with said force, and in pursuance of said military orders, arrest the plaintiff and take him to the city of *Indianapolis*, which are the supposed trespasses set out in the complaint; that said arrest was made peaceably and without force or violence, and in pursuance of the said military orders, and under the authority and by virtue of the laws of the *United States*, and by the order and authority of the President of the *United States.*

The defendants then offered to file a bond with two sureties, who were named to the court, conditioned that they should file the process and other proceedings against them in the Circuit Court of the *United States* for the District of *Indiana*, on the first day of its next session.

After the overruling of the defendants' motion to remove the cause to the *United States* Court, the cause was con-

tinued, pending a rule for an answer. At the next term, a default was taken, and the plaintiff's damages were assessed at $25,000, for which sum judgment was rendered by the court. The defendants moved to set aside the judgment and default, for the reason, *inter alia,* that the court had erred in overruling the motion of the defendants to remove the cause.

The appellants contend that the court below erred in overruling the motion to remove the cause to the Circuit Court of the *United States,* and insist that all proceedings of the *Sullivan* Circuit Court subsequent to the filing of the petition, and the offer to file a bond, are erroneous.

The application to remove the cause to the *United States* Court was based upon section 5 of "An act relating to *habeas corpus,* and regulating judicial proceedings in certain cases," approved *March* 3, 1863. U. S. Stat. at Large, vol. 12, p. 756. That section is as follows: "That if any suit or prosecution, civil or criminal, has been or shall be commenced in any state court, against any officer, civil or military, or against any other person, for any arrest or imprisonment made, or other trespass or wrong done or committed, or any act omitted to be done, at any time during the present rebellion, by virtue or under color of any authority derived from, or exercised by or under, the President of the *United States,* or any act of Congress, and the defendant shall, at the time of entering his appearance in said court," &c., "file a petition, stating the facts and verified by affidavit, for the removal of the cause for trial at the next Circuit Court of the *United States,* to be holden in the district where the suit is pending, and offer good and sufficient surety for his filing in such court, on the first day of its session, copies of such process," &c., "and also for his appearing in such court," &c., "it shall then be the duty of the state court to accept the surety, and proceed no further in the cause or prosecution."

Does the constitution of the *United States* authorize the courts of the *United States,* under appropriate legislation

by Congress, to assume the jurisdiction contemplated in this section?

The fourth section of the act of *March* 3, 1863, *supra,* provides, "That any order of the President, or under his authority, made at any time during the existence of the present rebellion, shall be a defense in all courts to any action or prosecution, civil or criminal, pending or to be commenced, for any search, seizure, arrest or imprisonment, made, done or committed, or acts omitted to be done, under and by virtue of such order, or under color of any law of Congress, and such defense may be made by special plea, or under the general issue."

The petition is in form and allegation in full compliance with the requirements of the fifth section of the act of Congress. It was filed on entering an appearance to the suit. It avers facts which, if true, show that the trespass or wrong complained of was "done or committed during the (then) present rebellion," and "under color of authority derived from, or exercised under, the President of the *United States.*" It makes out a complete defense to the suit, under the fourth section of the act. It thus presents a case arising under an act of Congress, and, admitting the allegations of the petition to be true, the only question for the court to determine would be, whether or not the fourth section of the act of Congress was constitutional.

Article three, section two, of the constitution of the *United States* provides, that "the judicial power (of the *United States*) shall extend to all cases, in law and equity, arising under this constitution, the laws of the *United States,* and treaties made, or which shall be made, under their authority; to all cases affecting ambassadors, other public ministers and consuls; to all cases of admiralty and maritime jurisdiction; to controversies to which the *United States* shall be a party; to controversies between two or more States, between a State and citizens of another State, between citizens of different States, between citizens of the same State, claiming lands under grants of different States,

and between a State, or citizens thereof, and foreign States, citizens and subjects."

It has been decided that a case arises, within the meaning of this provision, as well when the defendant seeks protection under a law of Congress, as when a plaintiff comes into court to demand some rights conferred thereby. *Cohens* v. *Virginia*, 6 Wheat. 264. The case then presented by the appellants' petition, "arising under the laws of the *United States*," comes within the very language of the constitution, which, in express terms, confers upon the *United States* courts jurisdiction. The power of Congress to provide for the transfer, before judgment, of cases which fall within the jurisdiction of the courts of the *United States*, cannot be questioned. It was provided by the act of 1789, that suits commenced in any State court against an alien, or by a citizen of the State in which the suit is brought against a citizen of another State, &c., should, upon petition, be thus transferred. The constitutionality of this provision has been repeatedly declared. The jurisdiction depended upon the citizenship of the parties to the action. By the act of March 2, 1833, called the "force bill," provision was made for the removal, before judgment, of cases arising under the revenue laws. The jurisdiction of the *United States* courts, under that act, as under the act now under consideration, was of the subject matter of the suit, and did not depend upon the parties. The act of 1833 provides "that in any case where a suit or prosecution shall be commenced, in a court of any State, against any officer of the *United States*, or other person, for, or on account of, any act done under the revenue laws of the *United States*, or under color thereof, or for, or on account of, any right, authority or title set up or claimed by such officer, or other person, under any such law of the *United States*, it shall be lawful for the defendant to file his petition," &c., "and thereupon it shall be the duty of the said State court to stay all further proceedings," &c. U. S. Stat. at Large, vol. 4, p. 633. If this provision in the act of 1833 is constitutional, there can be

no question as to the constitutionality of the same provision in the act of 1863, where, as in the case under consideration, the petition presents a complete defense under an act of Congress. That the provision cited from the act of 1833 is valid and effective has been repeatedly recognized. *Wood* v. *Matthews*, 23 Vt. 735. *Van Zandt* v. *Maxwell*, 2 Blatch. C. C. R. 421.

In the case of *Freeman* v. *Robinson*, 7 Ind. 321, which was an action of trespass for injuries committed by *Robinson*, who was *United States* Marshal, upon *Freeman*, while the latter was in custody as a fugitive slave, this court said: "Congress might, no doubt, have given an action in the federal courts against an officer of the general government for a personal injury done under color of office, but we are not informed that it has done so," &c. "As Congress has not legislated on the subject of this action, we do not see that it is possible that there should be any conflict between federal and state authorities."

In *Martin* v. *Hunter*, 1 Wheat. 304, Judge STORY says: "It is manifest that the judicial power of the *United States* is, unavoidably, in some cases, exclusive of all state authority, and in all others, may be made so at the election of Congress," &c. "Yet if the construction contended for be correct," (that the appellate power conferred by the constitution does not extend to cases originating in state courts and within their jurisdiction, but only to cases originating in the inferior federal courts,) "it will follow that as the plaintiff may always elect the state courts, the defendant may be deprived of all the security which the constitution intended in aid of his rights. To obviate this difficulty, we are referred to the power which it is admitted Congress possesses to remove suits from state courts to national courts," &c. "The existence of this power of removal is familiar in courts acting according to the course of the common law in criminal as well as in civil cases, and it is exercised as well before as after judgment. But this is always deemed, in both cases, an exercise of appellate, and

not of original jurisdiction. If, then, the right of removal be included in the appellate jurisdiction, it is only because it is one mode of exercising that power; and as Congress is not limited by the constitution to any particular mode or time of exercising it, it may authorize a removal either before or after judgment. The time, the process, and the manner must be subject to its absolute legislative control."

The fifth section of the act of 1863 has been repeatedly held to be constitutional. Mr. Justice DAVIS, of the Supreme Court of the *United States*, so ruled in the case of *Athon* v. *Morton et al.*, decided in 1864, in the *United States* Circuit Court for the District of *Indiana*. It was a suit by *Athon*, then Secretary of State, against *Morton*, Governor, and *Noble*, Adjutant General, of the State of *Indiana*, to recover fees, which the plaintiff claimed as Secretary of State, on military commissions issued by the defendants, without the attestation of the Secretary, or the seal of the State. The case was brought in the Court of Common Pleas of *Marion* county. An application by the defendants to remove the cause to the *United States* Circuit Court, under the act of 1863, was sustained. The ground of the application was that the commissions were issued under a law of Congress. In the *United States* Circuit Court, a motion was made to remit the case to the state court, which was overruled, and jurisdiction of the case was retained by the *United States* Court.

The Supreme Court of *Ohio*, in the case of *Tod* v. *Fairfield Common Pleas*, a case which presented the identical question before us in this record, carefully reviewed the subject and sustained the law, and awarded a mandate to the judge of the Common Pleas Court, directing the transfer of the cause. 15 Ohio St. R. 377.

The Supreme Court of *New York*, in the case of *Lister* v. *Butler*, sustained an application under the act of 1863 for the removal of the cause. The case is not yet reported.

A decision in favor of the right of removal under the law of 1863 was made by BALLARD, J., in the case of *Milton*

v. *Wilgus*, in the *United States* Circuit Court for the District of *Kentucky*. We have this opinion in manuscript from the learned judge who delivered it, and extract the following paragraph:

"I do not consider it necessary to discuss fully the constitutionality of the fifth section of the act of March 3, 1863, because its constitutionality has not been disputed by the learned counsel of the plaintiff. But I may say, that whatever doubt or difficulty I have respecting the constitutionality of the fourth section, I have none respecting the fifth. For whether or not Congress can make the order of the President a justification for 'any search, seizure, arrest, or imprisonment,' made during the rebellion, it is clear that this is what it has attempted to do in the fourth section. And it is equally clear that all persons claiming the protection of this provision have the right to have its constitutionality determined in the courts of the *United States*. Whether this provision is, or is not, constitutional, is a question arising under the constitution; and being so, it is one to which, by the very terms of the constitution, the judicial power of the *United States* extends. It is precisely such a question as cannot be finally decided in a state court, and precisely such a one as the party has the right to have removed to the *United States* Court for decision. Besides, the constitutionality of the fifth section has been settled by such a train of decisions, and so necessarily follows from numerous decisions of the Supreme Court of the *United States*, that its protracted discussion would be a work of supererogation. *Hodgson* v. *Millward*, 3 Grant's Cases (Penn.) 412; *id.* 418; *Jones* v. *Seward*, 41 Barb. (S. C.) 269; *Martin* v. *Hunter*, 1 Wheat. 304; *Cohens* v. *Virginia*, 6 *id.* 264."

We know of no case in which it has been held, by any court of final resort, that the fifth section of the act of 1863 is unconstitutional. On the contrary, we believe that a majority of the judges of the Supreme Court of the *United States* have, upon the circuit, affirmed its validity. But we think the validity of the fifth section of the act of Congress

may be sustained without reference to the fourth section of the act.

In *October*, 1864, the armies of the *United States* were in active service in the field. To sustain those armies, the government was drawing supplies, both of men and material, from this State. Its officers were active in procuring the enlistment of recruits for the military service. Without these supplies from the country in the rear of the armies, it was impossible to carry forward military movements, or to prosecute the war. Prisoners of war were sent, by the military officers in command of our forces in the field, to military camps within this State, to be guarded and securely kept. Under these circumstances, was it the duty of the President, or of the officer in command of the military district under him, to permit a hostile organization, as alleged in the petition, to be formed, armed and fully organized, to act in the interest of the rebellion, and, by force of arms, to attempt the release of the prisoners of war, and the destruction of the government? Must the military commander wait for an actual attack upon the military camps? Must he depend upon the courts to guard the prisoners of war placed within his charge? Must he permit the supplies of men and provisions to be cut off, and the country in the rear of our armies to be occupied by hostile forces? Must he wait for the blow to fall, or may he seize the conspirators while they are collecting their forces and preparing to strike? These are grave questions, that may involve not only the liberty of the men who, while claiming to be peaceable citizens, employed in civil pursuits, were, it is charged, in fact engaged in secretly organizing a hostile military movement for the destruction of their own government, but the decision of these questions may also concern the future life of the nation.

Congress, under the constitution, has the power "to declare war," and to provide for calling forth the militia "to suppress insurrection." The executive power of the gov-

ernment is vested in the President, by the constitution, and he is made the commander-in-chief of the army and navy of the *United States*, and of the militia of the several States, when called into the actual service of the *United States*. When Congress declares war, by that declaration it puts in force the laws of war, and the war powers of the government, which are not to be exercised, under the constitution, in time of peace, now come into full force, by virtue of the constitution, and are to be exerted by the President and Congress. After the declaration of war, every act done in carrying on the war, is an act done by virtue of the constitution, which authorized the war to be commenced. Every measure of Congress, and every executive act performed by the President, intended and calculated to carry the war to a successful issue, are acts done under the constitution; whether the act or the measure be for the raising of money to support armies, or a declaration of freedom to fill their ranks and weaken the enemy; whether it be the organization of military tribunals to try traitors, or the destruction of their property by the advancing army, without due process of law; and the validity of such acts must be determined by the constitution.

Having, by the constitution, the power to declare war, it follows that, in the language of Chief Justice MARSHALL, "Congress must possess the choice of means, and must be empowered to use any means which are, in fact, conducive to the exercise of a power granted by the constitution." *United States* v. *Fisher*, 2 Cranch 358. When, therefore, it is sought to hold any officer, or person, liable for any act of war done under the order of the President, or under any law of Congress, it presents a question arising "under the constitution of the *United States*;" for the power to do the act must be sought in the constitution, and whether that instrument authorized it, or not, is a question of construction, and of that question the courts of the *United States* may, under the authority of the constitution and the law of Congress, take exclusive jurisdiction. The complaint and

the petition in the record before us present such a question for determination, and Congress has claimed for the courts of the *United States* exclusive jurisdiction to determine it.

The recitals and averments of the petition prove the act complained of to have been done under orders from the military commander in this district, by soldiers and military officers acting in the military service of the *United States.* The act was plainly done under a claim of military authority and discretion vested by the constitution of the *United States* in the President. The construction of that instrument, as the source and limit of the executive war power, will sustain or condemn the act. That such a defense as is set forth in the petition filed in the Circuit Court of *Sullivan* county presents a question arising under the constitution of the *United States,* was held by Mr. Justice NELSON, of the Supreme Court of the *United States,* some years since, in an action of trespass against Commander *Hollins,* brought in the *New York* Court of Common Pleas, on behalf of the owners of property destroyed by him in his bombardment of *Greytown, Nicaragua.* The cause was removed into the Circuit Court of the *United States,* and argued on the point raised that *Hollins* was acting under orders from his superior officer, the President, and therefore was not liable to the plaintiff. To this it was replied that the President had no power to declare war, and that therefore the act of the President, and of *Hollins,* was without show of authority. The court, on full consideration, ruled that the decision of the President was final, and justified *Hollins* in the execution of his orders. Amer. Cyclop. 1862, p. 512; 4 execution of his orders. Amer. Cyclop. 1862, p. 512. This ruling, if followed by the Supreme Court of the *United States,* will sustain the action of Congress in the enactment of the fourth section of the act, the fifth section of which we have considered.

But it is insisted that as the appellants were not mustered into the service of the *United States,* the act was not done under color of authority; that the demand for

assistance should have been made upon the Governor of the State, and the order to the defendants to act should have come through *Hughes* from him. It is sufficient answer to say, that the defendants acted under the orders of *Hughes*, their superior officer, and that he claimed to act, and therefore did act, under color of authority derived from the military commander of the district of *Indiana*. Whether the military commander had the power to compel *Hughes* to act, or not, is not important, as he submitted to the orders and acted under them. The case of *Van Zandt* v. *Maxwell, supra*, decides what the words "under color of authority," used in the act of 1863, as well as the act of 1833, include. In that case, an action was brought in the Supreme Court of *New York*, to recover a part of the proceeds of merchandise condemned for a breach of the revenue laws, which the plaintiff claimed to be due him as the informer, upon whose information the goods were seized. The defendant, who was at the time collector of the port of *New York*, brought a *certiorari*, under the third section of the act of 1833, upon which the cause was removed into the Circuit Court of the *United States*. After holding that the act of withholding the money claimed from the plaintiff was at least colorably an official act, and within the statute, BETTS, J., says: "The act of *March* 2d, 1833, goes still further, for it gives the character of official acts not only to things actually done by an officer of the *United States* under color of the revenue laws, but also to those done under a claim by him of a right or authority derived from those laws." And again: "Nor do we accede to the argument of the plaintiff's counsel, that the defendant cannot transfer this cause to this court, for the reason that he is sought to be charged in it as a wrong-doer, in withholding moneys to which the plaintiff has a legal title. That doctrine would nullify the provisions of the act of 1833, because in every case of prosecution against a collector, or other revenue officer, the action seeks to charge such officer with a personal liability for acts asserted to have been done wrongfully,

McCormick and Others *v.* Humphrey.

and without authority of law. Especially is that so in respect to the collector when he is sued to recover from him duties levied and exacted on the importation of goods; for he is then always charged as a wrong-doer, for having obtained and withheld moneys belonging to the plaintiff, and which he had no right to demand or detain.

"The purpose of the act of 1833 was to place the jurisdiction over those questions between individuals and revenue officers in the Circuit Courts of the *United States*, to the exclusion of the state courts, and we think the present case is one which falls directly within the purview of that statute."

So also in the case already cited of *Wood* v. *Matthews*, which was an action of trespass for taking a horse, begun in one of the state courts. The defendant, by a petition under section 3 of the act of 1833, removed the cause to the *United States* Circuit Court, where a motion was made to remit the cause to the state court, for want of jurisdiction in the national court, because the action did not proceed from or bring in question any act or thing done by the defendant as an officer, under the revenue laws of the *United States*. In overruling this motion the court say: "Whether the horse in question was in truth seized and taken by the defendant in the exercise of his functions and the performance of his duty as an officer of the customs, under the revenue laws, as set forth in his petition for the removal of the cause, is a matter of fact, belonging to, and forming a part of, the merits of the case. It is involved in the inquiry whether the taking and detention were lawful and justifiable, and must be determined, not in a summary way, on motion and affidavits, contradicting and denying the facts so stated, and verified in the requisite form, but on trial of the merits, in the usual course of proceedings."

In holding that the Circuit Court of the *United States* for this district has exclusive jurisdiction of this case, we do not pass upon the merits of the action and defense as presented by the complaint and the petition. There is a court

having jurisdiction to determine that question, and the removal of the cause to that tribunal is not a denial of justice.

The judgment is reversed, with costs, and all proceedings subsequent to the filing of the petition are set aside, and the court is directed to pass upon the sufficiency of any bond that may be offered under the law of Congress, and if such bond be approved, to proceed no further in the case.

*A. G. Porter, B. Harrison* and *W. P. Fishback*, for appellants.

*J. M. Hanna*, for appellee.