## BURSON ET AL., ADM'RS, *v.* THE NATIONAL PARK BANK OF NEW YORK.

REMOVAL OF SUIT TO U. S. COURT.—*Appeal.*—An order made by a court of this State, removing a cause commenced by a citizen of another state, against a citizen of this State, to a court of the United States, on an application made for that purpose under the acts of Congress, puts an end to the cause so far as the state court is concerned, if the order is allowed to remain in force and be carried out; and such an order or judgment is so far final as to authorize an appeal to the Supreme Court of the State. *The City of Aurora* v. *West*, 25 Ind. 148, overruled on this point.

SAME.—If such an order is applied for and refused by the state court, the refusal is in no sense a final order or judgment, and no appeal will lie until the cause is finally disposed of by the state court; then, if the question is properly reserved, it can be presented for review.

SAME.—*Stay of Proceedings.*—When an order has been made by a state court for the removal of a cause to a United States court, and an appeal has been taken from that order to the Supreme Court, and the proper steps have been taken to stay proceedings, as in other cases of appeal, further proceedings on the order or judgment for the removal of the cause are at once suspended.

SAME.—*Time of Making Application.*—After a trial of a cause in a state court, which has resulted in a disagreement of the jury, and at any time before the commencement of another trial, an application to have the cause removed to a United States court may be made, and granted at the instance of either party.

Burson *et al.*, Adm'rs, *v.* The National Park Bank of New York.

SAME.—*Constitutional Law.*—The provision of the act of Congress authorizing such transfer at the instance of a plaintiff who has elected to bring, and has brought, his action in a state court, is constitutional.

APPEAL from the La Porte Common Pleas.

DOWNEY, J.—On the 24th day of September, 1858, at La Porte, Indiana, David G. Rose made his promissory note, by which he promised to pay, sixty days after date, to the order of Samuel Burson, six thousand dollars, at the Park Bank, New York. The note was indorsed by Burson to Walker, who indorsed it to Early, and he indorsed it to the bank. The bank, it is alleged, was a body politic and corporate by and under the laws of the State of New York, doing business in the city of New York. It is further alleged, by amendment of the complaint, that since the commencement of this action, the said bank became a corporation, under the banking law of Congress, as The National Park Bank of New York, and as such succeeded to the right of action. Burson having departed this life, at La Porte, on the 8th day of October, 1858, intestate, and the appellants having been, by the common pleas of La Porte county, appointed, on the 8th day of October, 1858, administrators of his estate, the Park Bank filed a claim against the administrators, based upon said promissory note, in the said common pleas court, on the 18th day of June, 1859. The complaint alleges the non-payment of the note, and the circumstances which are claimed to amount to notice to the administrators of its dishonor. After various amendments to the complaint, and after issues had been formed, there was a trial by jury, in October, 1868, and the jury failed to agree. In May, 1871, on motion of the plaintiff, upon petition, affidavit, and bond filed in form as required by the act of Congress, the court ordered that the cause be removed into the next circuit court of the United States to be held in the district of Indiana, and ordered the clerk to make out and deliver to the plaintiff, or its attorney, copies of all process, pleadings, depositions, etc., properly certified. From this order the defendants appealed to this court. Several errors

are assigned, but they raise no question, except as to the correctness of the ruling of the court in ordering the cause to be so transferred.

The appellee has submitted a motion to dismiss the appeal, on the ground that there is no final judgment in the common pleas, from which an appeal can be taken. This and also the other questions in the case are of exceeding interest and delicacy. While we feel it to be our duty, as it is our inclination, to concede to the courts of the government of the United States the jurisdiction and powers to which they are justly entitled, we are in duty bound to claim for the courts exercising authority under the state government the full measure of jurisdiction and authority which pertain or belong to them. An appeal lies to this court from all final judgments, and also from certain interlocutory judgments, of the common pleas. 2 G. & H. 269, sec. 550, and page 277, sec. 576. It is made the imperative duty of this court to inquire into and correct the errors of the inferior courts of the State, from which appeals are taken to it, when properly presented. When, as in this case, an order has been made by one of such courts transferring a cause to the courts of the United States, courts of another and distinct government, or when such an order has been properly applied for and improperly refused, it would seem to be the duty of this court, on an appeal properly taken to it, to decide upon the correctness of such ruling. If the ruling is found to have been erroneous, it should be reversed. If it be found to have been correct, it would be the duty of this court to remand the cause to the inferior court, with instructions to carry out the order.

But was the order or judgment of the common pleas final in such sense as to authorize an appeal to this court? The order put an end to the cause, so far as the state courts are concerned, if it shall be allowed to remain in force and be carried out. If the party opposing such order cannot appeal at that stage of the case, he can never appeal to this court. It is our opinion that such an order or judgment is

so far final as to authorize an appeal to this court. When such an order is applied for and refused, the cause remains pending in the court, and such refusal is in no sense a final order or judgment. But if the point has been properly reserved, the question can be brought to this court, after final judgment, and then decided by this court, as was done in *Skeen* v. *Huntington*, 25 Ind. 510. When the order has been made for the removal of the cause to the circuit court, and an appeal from that order has been taken to this court, and the proper bond filed, or when, in an appeal after the term, a supersedeas has been awarded, and bond executed, further proceedings on the order or judgment for the removal of the cause are at once suspended. 2 G. & H. 271, sec. 555, and page 273, secs. 558, 559. If it shall be said that the proper course, when such an order has been made, is to allow the cause to be removed to the United States court, trusting to that court to remand the same to the state court, if it shall be found to have been improperly transferred, we think it may, with equal, if not greater, propriety, be said that the proper course is to allow the appeal to be taken to this court from such order, and trust to this court, if it shall be found that the order was properly made, to remand the cause to the inferior court, with instruction to carry out the order. We are not aware of any reason why such question, which evidently must be decided by one of the tribunals, may not as well be left to the decision of this court as to that of the circuit court of the United States. Especially is this so when, if we should err, the cause may be taken from this court to the Supreme Court of the United States.

It is true that the act of Congress provides that when the application has been made in the proper manner for the removal, the state court shall proceed no further in the cause. But this does not settle the question. The question is not, shall the subordinate state court proceed no further? but may the party who has thus been prevented from having the cause tried in the court in which the suit was

Burson *et al.*, Adm'rs, *v.* The National Park Bank of New York.

pending appeal to this court? If he cannot, where, and to whom is he to look for a correction of even the most flagrant errors and abuses resulting from the action of the subordinate court? We are aware of the ruling of this court in *The City of Aurora* v. *West*, 25 Ind. 148, and we have only this to say of that case, that is, that we think the court too readily and without any good reason therefor yielded up the rightful jurisdiction of this court. After citing the statute to which we have already referred on the subject of appeals to this court, it is said in the opinion: "The case at bar does not come within any of these provisions, and we do not think that an appeal will lie. It is the duty of the United States court to remand the case to the state court; and when so remanded, it will be the duty of the latter court to proceed with the case." And entertaining this view, the court dismissed the appeal. Decisions since made by other courts have thrown additional light on the subject, and the reasoning in these cases, as well as our own judgment, requires us to refuse to be governed by the ruling in that case. Notwithstanding the fact, however, that the court in that case came to the conclusion that it had no jurisdiction of the appeal, it did decide that the case was one in which the removal of the cause to the United States court was not authorized. Without extending this opinion by making extracts from the opinions, we refer to the following cases, which, we think, fully justify us in holding that the right of appeal to this court from such an order exists. *Akerly* v. *Vilas*, 24 Wis. 165; *Whiton* v. *The Chicago and Northwestern Railway Company*, 25 Wis. 424; *The Home Life Insurance Company* v. *Dunn*, 20 Ohio St. 175; *Kanouse* v. *Martin*, 15 How. U. S. 198.

We come, then, to the question, whether the action of the court in transferring the case was correct or not. It is insisted by counsel for the appellants, first, that the cause could not properly be transferred after the trial was had by the jury, although they failed to agree upon a verdict, and

the case remained to be again tried; and, second, that·the act of Congress authorizing such transfer at the instance of a plaintiff who has elected to bring, and has brought, his action in the state court, is unconstitutional and void, and therefore the order of transfer was improperly made.

The act in question, that of March 2d, 1867, authorizes the transfer in cases wherein there is a controversy between a citizen of the state in which the suit is brought and a citizen of another state, and the·matter in dispute exceeds the sum of five hundred dollars, exclusive of costs; and provides that such citizen of another state, whether he be plaintiff or defendant, if he will make and file in such state court an affidavit, stating that he has reason to and does believe that, from prejudice or local influence, he will not be able to obtain justice in such state court, may, at any time before the final hearing or trial of the suit, file a petition in such state court for the removal of the suit into the next circuit court of the United States to be held in the district where the suit is pending, and offer good and sufficient surety for his entering in such court, on the first day of its session, copies of all process, pleadings, etc., and it shall thereupon be the duty of such state court to accept the surety and proceed no further in the suit, etc.

The act of July 27th, 1866, authorized the transfer "at any time before trial or final hearing," the words "final hearing" referring, perhaps, to chancery causes. The language of the act of March 2d, 1867, as we have seen, is, "at any time before the final hearing or trial." Counsel for the appellants contends that the transposition of the words does not require or justify any change in the construction, and that as the cause was once tried, after that it was too late to have it removed to the United States court. They insist that the word "final" is used to qualify the word "hearing," which immediately follows it, and not the word "trial."

In the case of *Akerly* v. *Vilas, supra*, it was said, in discussing this statute: "What was its intent? I think it will not be claimed that the word 'final,' as used in this pro-

vision, applies to or qualifies the word 'trial.' The word 'hearing' has an established meaning, as applicable to equity cases. It means the same thing in those cases that the word 'trial' does in cases at law. And the words 'final hearing' have long been used to designate the trial of an equity case upon the merits, as distinguished from the hearing of any preliminary questions arising in the cause, and which are termed interlocutory."

It is further said in that case: "It seems clear, therefore, that whenever in any state court there has been a trial in an action at law, or a final hearing in an action in equity, the result of which was an adjudication which, upon the principles governing judicial decisions, would be final between the parties as to any portion of the merits of the action, the case has passed beyond the stage where it was within either the letter or the spirit of this law."

In *The Home Insurance Co.* v. *Dunn, supra,* the Supreme Court of Ohio follow the case in the Supreme Court of Wisconsin, from which we have quoted, with reference to the construction of the act, and say: "The terms, it seems to us, were intended to embrace actions at law and suits in equity, the word 'trial' having reference to an action at law, and the words 'final hearing' to a suit in equity; and that by 'the final hearing or trial of the suit,' is meant a hearing or trial upon the merits, such as results in a final judgment in an action at law, and a final decree in a suit in equity."

It remains to inquire whether there was a trial, in this sense, of the case under consideration. The jury, after hearing the evidence and argument and retiring to their room, were unable to agree, and being discharged, the case stood for trial as it did before the jury was impanelled. According to the case of *Akerly* v. *Vilas,* the trial must have resulted in "an adjudication which, upon the principles governing judicial decisions, would be final between the parties," etc. And according to the case of *The Home Insurance Co.* v. *Dunn,* it must have been such a trial "as results in a final judgment in an action at law, and a final decree in a suit in

equity." We think it pretty clear that an examination of the facts before a jury which results in a disagreement of the jury and in no verdict, is not a trial within the meaning of the act of Congress.

We do not decide that the court would be required to hear and grant such an application during · the progress of the trial-of the cause. What we do decide is, that after a trial which has resulted in a disagreement of the jury, and at any time before the commencement of another trial, the application may be made and granted at the instance of either party.

In *The Home Life Insurance Company* v. *Dunn, supra,* it was decided that the removal of a cause could not be applied for and granted after a trial and appeal taken to a higher court or a new trial granted.

In *Hadley* v. *Dunlap,* 10 Ohio St. 1, it was held that the improper refusal of such an application did not affect the jurisdiction of the court so as to render its judgment in the case void.

We come, lastly, to the question as to the constitutionality of that part of the act which authorizes a plaintiff to have a cause removed from the state to the United States Court. In *Whiton* v. *The Chicago, etc., Railway Company,* 25 Wis. 424, this precise point was made, and it was held, the Chief Justice dissenting, that that feature of the act of Congress was unconstitutional and void. The argument in brief is this: The constitution of the United States confers upon the courts of the United States jurisdiction in certain cases. Congress has power to enact all laws which are necessary to enable the courts of the United States to acquire and exercise this jurisdiction. But it is not necessary that Congress should enact a law to enable a plaintiff to withdraw his action from the state court. He had his choice to sue, in the first instance, in the United States court, or in the state court, and having voluntarily commenced his action in the state court, he has waived or abandoned the right to have the cause adjudicated by the courts of the United States. The

Burson *et al.*, Adm'rs, *v.* The National Park Bank of New York.

statute makes no provision for the transfer of causes which might not originally have been commenced in the United States court. When Congress has provided the necessary courts and endowed them with the faculties and powers necessary to take jurisdiction of, and hear and decide, the cases referred to in the constitution of the United States, it has done all that is necessary to carry out the power conferred by the constitution; that anything more than this is over and beyond what it may constitutionally do; that if the litigant voluntarily refuses to use the courts thus provided, and goes into the courts of the state, Congress cannot legislate to enable him to remove his case to the courts of the United States, etc. Legislation which allows and authorizes a defendant to remove a suit brought against him, from a state to a United States court, stands upon a different basis, and is supported by different reasons from those which authorize a plaintiff to so remove his action. *McCormick* v. *Humphrey*, 27 Ind. 144.

Judge STORY, in his work on constitutional law, sec. 1243, in discussing the powers of Congress, says: "Whenever, therefore, a question arises concerning the constitutionality of a particular power, the first question is, whether the power be expressed in the constitution. If it be, the question is decided. If it be not expressed, the next inquiry must be, whether it is properly an incident to an express power, and necessary to its execution. If it be, then it may be exercised by Congress. If not, Congress cannot exercise it."

But, notwithstanding this reasoning, we feel compelled to decide in this case that the feature of the act of Congress in question is constitutional.

It appears that in the case of *Whiton* v. *The Chicago, etc., Railway Company, supra*, the local state court granted the petition, and ordered the removal of the action to the federal court, but directed a stay of proceedings upon its order to enable the defendant to appeal from it to the Supreme Court of the state, and provided that in case such appeal should

be taken, all proceedings should be stayed until its determination. The appeal was taken, and the order of removal reversed by the Supreme Court of the state in the opinion to which we have referred. The plaintiff did not, however, regard the order for a stay of proceedings until the disposition of the appeal, but procured copies of the papers in the cause from the local state court and filed them in the circuit court of the United States. The latter court thereupon took jurisdiction of the cause, and a new declaration was filed. The defendant moved the circuit court that the cause be dismissed from its calendar, and the papers be stricken from its files, which motion was denied by the court. The cause having been removed to the Supreme Court of the United States on writ of error, the question was there presented whether that part of the act of Congress which allowed a plaintiff to apply for and obtain such transfer was constitutional or not. The court held that it was constitutional. The learned judge who delivered the opinion of the court said:

"Third, as to the alleged invalidity of the act of March 2d, 1867, under which the removal from the state court was made. The counsel for the defendant, while confining his special objection to this act, questions the soundness of the reasoning of Mr. Justice Story, by which any legislation for the removal of causes from a state court to a federal court is maintained. We may doubt, with counsel, whether such removal, before issue or trial, can properly be called an exercise of appellate jurisdiction. It may, we think, more properly be regarded as an indirect mode by which the federal court acquires original jurisdiction of the causes. But it is not material whether the reasoning of the distinguished jurist in this particular is correct or otherwise. The validity of such legislation has been uniformly recognized by this court since the passage of the judiciary act of 1789.

"The judicial power of the United States extends by the constitution to controversies between citizens of different states, as well as to cases arising under the constitution,

treaties, and laws of the United States, and the manner and conditions upon which that power shall be exercised, except as the original or appellate character of the jurisdiction is specially designated in the constitution, are mere matters of legislative discretion.   In some cases, from their character, the judicial power is necessarily exclusive of all state authority; in other cases it may be made so at the option of Congress, or it may be exercised concurrently with that of the state. Such was the opinion of Mr. Justice STORY, as expressed in *Martin* v. *Hunter's Lessee*, and this conclusion was adopted and approved by this court in the recent case of *The Moses Taylor.*   The legislation of Congress has proceeded upon the correctness of this position in the distribution of jurisdiction to the federal courts.   The judiciary act of 1789, as observed in the case of *The Moses Taylor*, declares, 'that in some cases from their commencement such jurisdiction shall be exclusive; in other cases it determines at what stage of procedure such jurisdiction shall attach, and how long and how far concurrent jurisdiction of the state courts shall be permitted.   Thus, cases in which the United States are parties, civil causes of admiralty and maritime jurisdiction, and cases against consuls and vice consuls, except for certain offences, are placed from their commencement exclusively under the cognizance of the federal courts.   On the other hand, some cases in which an alien or a citizen of another state is made a party may be brought either in a federal or a state court, at the option of the plaintiff, and if brought in the state court, may be prosecuted until the appearance of the defendant, and then at his option may be suffered to remain there, or may be transferred to the jurisdiction of the federal courts.   Other cases, not included under these heads, but involving questions under the constitution, laws, treaties, or authority of the United States, are only drawn within the control of the federal courts upon appeal or writ of error after final judgment.   By subsequent legislation of Congress, and particularly by the legislation of the last four years, many of the cases which by the judiciary act could

only come under the cognizance of the federal courts after final judgment in the state courts, may be withdrawn from the concurrent jurisdiction of the latter courts at earlier stages, upon the application of the defendant. The constitutionality of these provisions cannot be seriously questioned, and is of frequent recognition by both state and federal courts.'

"When the jurisdiction of the federal court depended upon the citizenship of the parties, the case could not be withdrawn from the state courts after suit commenced until the passage of the act of 1867, except upon the application of the defendant. The provision of the constitution extending the judicial power of the United States to controversies between citizens of different states had its existence in the impression that state attachments and state prejudices might affect injuriously the regular administration of justice in the state courts. The protection intended against these influences to non-residents of a state was originally supposed to have been sufficiently secured by giving to the plaintiff, in the first instance, an election of courts before suit brought; and where the suit was commenced in a state court, a like election to the defendant afterward. The time at which the non-resident party should be allowed thus to make his election was evidently a mere matter of legislative discretion, a simple question of expediency. If Congress has subsequently become satisfied, that where a plaintiff discovers, after suit brought in a state court, that the prejudice and local influence, against which the constitution intended to guard, are such as are likely to prevent him from obtaining justice, he ought to be permitted to remove his case into a national court, it is not perceived that any constitutional objection exists to its authorizing the removal, and, of course, to prescribing the conditions upon which the removal shall be allowed. It follows, from the views we have expressed, that the objection to the jurisdiction of this action by the circuit court, upon the grounds advanced by the defendant, cannot be maintained." 13 Wal. 270.

While we feel constrained to follow this ruling, and hold that the feature of the law in question is constitutional, with the utmost deference to the opinion of that high tribunal, we venture to suggest that when it is said, in the opinion, "if Congress has subsequently become satisfied that where a plaintiff discovers, after suit brought in a state court, that the prejudice and local influence, against which the constitution intended to guard, are such as are likely to prevent him from obtaining justice, he ought to be permitted to remove his cause into a national court," etc., a case is supposed which is wholly different from that which is provided for in the act. The act of Congress does not provide for those cases only where the plaintiff shall discover, "after suit brought," that there are prejudice and local influence, etc. 'If the act were confined to such cases, there might be little reason for its enactment. But the act does not require the plaintiff to show, in his petition, that he has discovered the existence of such prejudice and influence since the bringing of the action, and there is no such statement in the petition in this case. The plaintiff may, under the act of Congress, have the cause removed upon stating the existence of such prejudice or local influence, although he knew of the existence thereof as well when he commenced the action as he does when he makes the application.

But following the ruling in this case, we hold that the part of the act in question is constitutional, and that the court of common pleas committed no error in ordering the removal of the cause.

The judgment is affirmed, with costs.

*J. Bradley*, for appellants.

*J. B. Niles* and *W. Niles*, for appellee.