LUNING, impleaded with another v. THE STATE.

1. EVIDENCE—EXPERTS.—A witness may be asked questions involving scientific opinions in a matter in which he is skilled, if they be isolated and not coupled with propositions except those which are purely scientific, and his answers will be proper and competent evidence.

2. SAME—READING OF SCIENTIFIC BOOKS.—It is within the discretion of the court to hear or refuse to permit the reading of scientific books on the trial of a cause, but this discretion might be so far abused as to require correction upon a review of the case.

(1 *Chand.* 264.)

ERROR to the Circuit Court for *Dodge* County.

The indictment against the plaintiff in error here, was before this court, at the January term, 1849, upon exceptions taken on the trial at the circuit, and the judgment had on such trial was reversed. *Ante* 215. In accordance with the reversal of this judgment, the same indictment came on for trial in the circuit court for Dodge County.

The plaintiff in error took several exceptions to the ruling of the court, touching the rejection of the evidence offered by him, in defense, and as to the admission of testimony on the part of the *State*; but the following exception seems to be the only one noticed or decided upon by this court. The counsel for the plaintiff put the following interrogatory to James P. Whitney, a practicing physician of the city of Milwaukee, to wit: "Is it not a well ascertained fact in medical science, that the malaria spoken of ·will not cross a stream? to be followed up with proof of the fact from the scientific knowledge of the witness that ditches have been expressly made for the purpose of shutting out a malarious region of country from a salubrious one; and with proof from the same knowledge, that such has been the effect of such ditches; and that such ditches have prevented the crossing of malaria into salubrious regions, where it had previously crossed from such as were malarious." To the putting this question, or to the answer to be given thereto, the prosecuting attorney for the state objected, because the witness could not testify to anything but facts within his own knowledge. Upon this objection the court gave its opinion that it was well taken, and ruled that the question should not be put. To this ruling and decision the counsel for the state excepted.

Various evidence was offered on the part of the *State*, tending to show, in the opinion of the witnesses, that the erection of the dam and the raising of the waters of Cedar creek, at Cedarburgh, had, by means thereof, created disease and an unwholesome atmosphere; and this was sought to be repelled by the plaintiff in error, by the reading of scientific books upon the subject of malaria, coupled with oral evidence. Touching which proofs, various exceptions were taken, which, inasmuch as the court has not specially noticed them, it is not deemed necessary to enlarge the statement of the case, by enumerating them.

*J. Holliday*, for plaintiff in error contended, in addition to the exceptions above noted, that the statutes making provision

for the erection of mill-dams, and securing such like rights to persons who, under their provisions shall erect them, are clothed with a protection against a criminal prosecution for the effects or consequences which may follow or ensue the erection, touching the influence it may have upon health, or the annoyance which may result to individuals therefrom; that so far as the jurisdiction of the state is concerned in the exercise of inflicting punishment, for the erection of a mill-dam, its power is *functus officio* touching all cases where the statutes have been complied with in obtaining the right of building and maintaining it; that the remaining and only right of redress to individuals whose health was affected in consequence of the erection, was a prosecution civilly, for such injury; that they could not usurp the power or name of the state, to prostrate that, which by the state had been authorized to be constructed, though individual injury should ensue; and to this point was cited 12 Pick. 478.

*J. S. Brown* and *A. D. Smith*, on the part of the *State*, insisted that the statutes giving authority for the erection of mill-dams, did not deprive the state of the exercise of its powers to prosecute criminally, to procure the abatement of a nuisance which was unendurable, or which injuriously affected the health of the neighborhood; that the grant of the right was in subserviency to the injury it might inflict, and if injury to the public ensued, the state should exert its power to relieve the suffering individuals from harm, especially where health was concerned.    To this general doctrine, reference was made to Ros. Ev. 659.    And to the point of admitting the evidence of Doctor Whitney, upon which the exception was taken, and in affirmance of the rejection of that evidence by the court, the counsel cited 1 Greenl. 440; 5 Car. & P. 219.

STOW, C. J.    This is the second appearance of this cause in this court, a new trial having been had since the January

term. The only ground on which the former judgment was reversed, was that the opinions of unlearned persons, not physicians, as to the influence the mill-dam in question had in producing the disease complained of, were allowed to go to the jury.

Of the various questions now raised, it is not necessary, nor is it proper, to consider but one — all the others having been distinctly passed upon in the previous decision — for we wish it to be understood that where a question, properly before this court, has, after argument, been solemnly decided here, it is not open for discussion. The legislature, and not the court, must correct the error, if there be any.

The court below refused to allow the following question to be put to the medical witness, Whitney: "Is it not a well-ascertained fact in medical science, that the malaria spoken of will not cross a stream?" to be followed up with the proof of the fact, from the scientific knowledge of the witness, that ditches have been made for the express purpose of shutting out a malarious region of country from a salubrious one, and with proof, from the *same knowledge*, that such ditches have prevented the crossing of malaria into salubrious regions, where it had previously crossed from malarious ones. This question was objected to by the counsel for the *State*, on the ground that the witness could not testify to anything but facts within his own knowledge. For a proper understanding of the question and proposition, it is necessary to examine the previous testimony of the witness.

The question itself, stripped of the accompanying proposition, is a very proper one, and probably would not have been objected to. Similar scientific principles were given in evidence by the witness, and well-settled results were allowed to be shown by medical books. For instance: Whitney says, "if a malarious region was covered with water, so long as it was kept submerged it would prevent the extrication of malaria." "Stagnant water in a malarious region will not tend

to create disease." "If water becomes stagnant in a district not malarious, there would be no danger from the water." "The scum spoken of absorbs the very poison that the water might otherwise evolve." "It is generally conceded by the medical faculty, that still water will retain malaria." Now, these are all scientific principles, or ascertained results, and do not vary in character from the question proper, proposed to be put. How far, then, does the accompanying proprosition modify it? Was it intended that the witness should testify from his " scientific knowledge," derived from medical and philosophical works, as to facts, or rather examples and particular experiments therein related? or was he to speak from his "scientific knowledge," derived from his personal examination of certain ditches? If from the latter, the question was in no wise different from many others which were permitted to be answered. If from the former, the testimony would have been mere hearsay. It would have been receiving as evidence of facts, mere recitals from books, not only unaccompanied with the sanction of an oath, but at second hand. The witness appears, by the bill of exceptions, to have been allowed repeatedly to testify to scientific facts, derived from his personal experience and observation; as, "from my own observation, I know that the west and northwest are malarious countries." " Water, in passing over a dam, or water-wheel, will evolve any volatile particles it contains." " During the latter part of the summer, for the past two years, nearly every family at the commencement of the rapids, four miles above Milwaukee, have had fever and ague and remittents." From this examination alone, aside from the objetion of the district-attorney, "that the witness could not testify to *facts* not within his own knowledge," it *is* manifest that the purpose of the question and proposition was to extract from the witness evidence of *facts* derived from his " scientific," not his personal knowledge; or, in other words, that he was to swear to facts, the existence of which he only

knew from his reading ; and this, upon no principle of evidence, could be admitted. 'Aside from this, taking this witness Whitney's testimony as a guide, it is apparent that the question was no way material, as he had already testified that the decomposition of neither vegetable, aqueous, or animal matter, nor all or either combined, would produce malaria ; thus showing, as far as his testimony was to be relied on, that the disease did not proceed from the mill-pond. The testimony was, therefore, immaterial, and properly rejected. This is the only ground of error that can properly be considered. But as we permitted an argument in regard to the use of what are called scientific books, on a trial, we repeat what we before said on this subject : it is a matter wholly within the discretion of the judge, and is not the subject of a writ of error. An extreme case may be supposed, in which the discretion of the judge, both in the admission and exclusion of books might be so abused as to require correcting ; but this is very far from such a case. A liberal use of medical books seems to have been allowed.

Judgment of the circuil court affirmed.