## AKERLY VS. VILAS.

*Transfer of cause from state to federal court — Act of Congress of March 2 1867, construed — Order of circuit court for such transfer, appealable.*

1. An order of a court of this state transferring a cause to the district court of the United States (on demand of one of the parties, based upon the act of congress of March 2, 1867), is *appealable;* and this court has jurisdiction to hear and determine the appeal.
2. The words "final hearing or trial" in said act are equivalent to "trial or final hearing;" and after an action at law has been tried, or a suit in equity heard, on the merits, at the circuit, it is not transferable under the act, although the judgment may have been reversed on appeal, and the cause remitted for a new trial or further proceedings.
3. Whether it is competent in any case for congress to require the transfer of a cause from a state court to a federal court, on the application of the *plaintiff* therein, *quære.*

APPEAL from the Circuit Court for *Dane* County.

After the decision of this cause, on appeal from a judgment against *Vilas*, as reported in 23 Wis. 207-223, and after it had been remitted for a new trial, the circuit court, on plaintiff's motion, made an order transferring it to the United States circuit court for the district of Wisconsin; and from this order *Vilas* appealed.

*Wm. F. Vilas* (with *Spooner & Lamb*, of counsel), for appellant.

*Finches, Lynde & Miller*, for respondent, to the point that this court had no jurisdiction to hear or determine this appeal, and that all proceedings in the cause in any state court, after the order for the removal was made, would be *coram non judice*, cited *Gordon v. Longest*, 16 Pet. 104; 6 Wallace, 247; *Livermore v. Jenks*, 11 How. Pr. 479; 3 Grant's Cases, 418, 420, 436; 25 Vt. 716; *Kanouse v. Martin*, 15 How. 198.

PAINE, J. This is an appeal from an order of the Dane circuit court, sending the case to the United States circuit court for the district of Wisconsin. The applica-

tion for removal was made by the plaintiff under the act of congress of March 2, 1867. And the appellant claims that the order was erroneous upon two grounds : first, that the case was not within the act; secondly, that, if it were within it, the act itself, so far as it professes to authorize a non-resident plaintiff, who had commenced his suit in the state court, to obtain a removal, is invalid.

The respondent's counsel have declined to argue either of these questions, but have contented themselves with simply submitting and briefly discussing the proposition that this court has no jurisdiction to hear and determine this appeal. Of course, this question must be determined upon the hypothesis that it is possible that the case may not have been within the act of congress, and that, even if within it, the act may have been invalid. Counsel assume this possibility; for they say that the appellant's remedy (if indeed he has any), "is to apply to the federal court to remand the case to the state court." In support of the position they refer to two classes of authorities ; but these wholly fail to sustain it, and, in truth, warrant directly the opposite conclusion. And it would seem impossible to have drawn any such inference from them, except by confounding the distinction between the two classes, and applying the doctrines of both indiscriminately to each. Thus, they first refer to several cases, holding that, where a proper application for a removal is made, in a case where the party is entitled to a removal by law, the jurisdiction of the state court ceases, and every subsequent step, except that of sending the case away, is *coram non judice* and void. They next cite another class, holding that, where the order of removal was improperly made, in a case where the party was not entitled to it, an application may be made to the federal court to dismiss it for want of jurisdiction. And they then seek to transfer to the latter class of cases the doc-

trines of the former, and to hold that the jurisdiction of the state court ceases, and every step subsequent to the application for removal is equally as unauthorized and void in those cases where the order for removal is improper, and the party not entitled to it by law, as in the others.

Such a conclusion is in conflict with both classes of cases. Both proceed upon the express assumption that it is only where the removal is authorized by law, and, the application properly made, that the jurisdiction of the state court is divested, and that of the federal court attaches. Both proceed upon the assumption that, where this is not the case, the jurisdiction of the state court remains, and the federal court acquires none whatever. And yet we are now asked to hold that although this case may have been one of the latter class — though it may be one in which there was no law authorizing a removal, and in which, consequently, the federal court acquired no jurisdiction — yet, by some unaccountable process, the state court lost it, so that, between the two, the jurisdiction has lapsed entirely. Such a conclusion would be extraordinary indeed ; and it has as little support in authority as it has in reason.

If there was no law authorizing the removal — and there was none if either of the positions taken by the appellant is true — then the jurisdiction of the state court remained unimpaired, and there was no obstacle in the way of its exercise, except the erroneous order that the case be removed. And the idea that the appellate power of the state courts cannot be invoked to correct this error — that it remains in abeyance, suspended by such an unauthorized application — that the court which has jurisdiction must decline to exercise it, until the court that has none shall see fit to disclaim it, is one that cannot be supported upon any reasoning.

But, if the right to appeal exists in a case where the removal is unauthorized, then it must also exist even

when the order of removal is proper. The question whether the court has power to hear and determine the appeal, cannot depend upon the conclusion to which it may come on the merits of the order to be reviewed.

Nothing is better settled in legal practice than that an order by which a subordinate court dismisses a case for want of jurisdiction, or in any way divests itself of jurisdiction, is subject to review on appeal. It is within the express provision of our statute that allows an appeal from any order which prevents a judgment from which an appeal might be taken. It is the common practice of all courts. The case of *The Mayor v. Cooper*, 6 Wal. 247, cited by the respondent, is one where the supreme court of the United States reviewed such an order made by the United States circuit court. It is true, in that case the order or judgment of dismissal was reversed, the court holding that the circuit court had jurisdiction. But, if they had held differently, they would have affirmed the order, and not have dismissed the writ of error. This is the invariable practice. And this shows that the exercise of the power to hear and determine an appeal from an order by which a subordinate court attempts to divest itself of jurisdiction, is not an assertion of jurisdiction in the case subsequent to and in defiance of the application for removal. It is merely the decision upon that application itself. And that decision, whether the power be exercised by a subordinate or appellate court, is not the exercise of jurisdiction in the case. It is the determination of an independent preliminary question, and one which every court, from the necessity of the case, has the power to determine whenever presented. And whoever invokes the exercise of this power on the part of a subordinate tribunal of the state, must invoke it subject to all the conditions imposed upon that tribunal by the law of its existence; and one of those conditions is, that an order made upon such an application is appealable.

That the power to hear and determine an appeal from such an order is entirely independent of the question of jurisdiction to proceed upon the merits of the action, the case of *Nelson v. Leland et al.* 22 How. (U. S.), 48, is an express authority. A motion was there made to dismiss the appeal on the ground of a want of jurisdiction originally in the subordinate court. And the chief justice delivered the opinion of the court, "that the question of jurisdiction in the lower court is a proper one for appeal to this court, and for argument when the case is regularly reached, and that this court have jurisdiction on such appeal." The motion was therefore denied, and upon the express ground that their jurisdiction of the appeal was wholly independent of the actual jurisdiction of the lower court to try the action upon its merits. And, if this is so, the exercise of this appellate power is not the exercise of that jurisdiction of which it is claimed the state court is divested by the presentation of a proper application for removal. It is true that, if the appellate court should sustain the jurisdiction of the state tribunals, they might proceed subsequently to attempt to exercise it. But the mere determination of the question whether such jurisdiction has ceased or continued, is not an exercise of it, any more when made by the appellate, than it was when made by the subordinate court.

Indeed, the right and the duty of the state courts to exercise such appellate power has been expressly decided by the supreme court of the United States, in *Kanouse v. Martin*, 15 How. 198. The court of common pleas in the city of New York had denied an application for removal, and afterward proceeded to try the action on the merits, and rendered judgment. It was taken by appeal to the superior court, which affirmed the judgment. And the supreme court of the United States reversed that judgment, on the ground that the superior court erred, not in taking jurisdiction of the appeal, but

in neglecting to reverse the judgment of the common pleas, for refusing the application for a removal. They say: "The error of the superior court was therefore an error *occurring in the exercise of its jurisdiction*, by not giving due effect to the act of congress under which the plaintiff in error claimed," etc. And it made an order remanding the case to the superior court, with directions for further proceedings in conformity to the opinion. And such further proceedings would consist wholly of an exercise of the appellate power of the superior court to reverse the judgment of the common pleas.

And yet we are referred to this case by the respondent's counsel, to support their assertion that this court will "stultify itself by taking jurisdiction of this appeal."

This court certainly is not oblivious of the fact that if it should hold that a removal of this suit was unauthorized, and should subsequently proceed to render final judgment, after such further trial as may be necessary, the supreme court of the United States may assert its appellate jurisdiction over that judgment, may reverse it, and remand the case with directions similar to those in *Kanouse v. Martin*, as counsel suggest. But we feel very confident that, if it should do so, it will not be because this court erred in assuming jurisdiction of the appeal, but because it will think this court erred in holding the plaintiff not entitled to a removal.

I have thus endeavored to state the distinction between the exercise of the power to decide upon the application for a removal, whether by the subordinate or appellate court, and the exercise of jurisdiction over the merits of the action, for the purpose of showing that the broad language used by the court in *Gordon v. Longest*, 16 Peters, 104, cannot, in any event, be applicable to the exercise of such appellate power. But it is, perhaps, doubtful whether the same language would be now used by that court. The subsequent case of *Kanouse v. Mar-*

*tin* seems studiously to avoid it, and makes no suggestion that the judgments of the court of common pleas, and of the superior court, were void for want of juris diction, but speaks of them, throughout the opinion, as merely "erroneous." And the same view is also supported by the case of *Hadley v. Dunlap*, 10 Ohio St. 1.

I come, therefore, to the conclusion that this order is appealable, and that it is the duty of this court, from which it cannot shrink, to proceed to a determination of the questions presented.

Was the case within the provisions of the act of congress? The act provides that the non-resident party to a suit, in a state court, between a citizen of that state and a citizen of another state, shall be entitled to a removal, on making the proper application, "at any time before the final hearing or trial of the suit." The question arises, upon this language. Was the application here made, "before the final hearing or trial," in accordance with its intent and meaning?

What was its intent? I think it will not be claimed that the word "final," as used in this provision, applies to or qualifies the word "trial." The word "hearing" has an established meaning as applicable to equity cases. It means the same thing in those cases that the word "trial" does in cases at law. And the words "final hearing" have long been used to designate the trial of an equity case upon the merits, as distinguished from the hearing of any preliminary questions arising in the cause, and which are termed interlocutory. This use and meaning of the words is too well established and too familiar to require reference. I assume, therefore, that the meaning of the statute is the same as though these words were transposed, and it provided that the application might be made at any time "before trial or final hearing;" and that no implication can be raised by attempting to apply the word "final" to the word "trial," that congress intended to distinguish

between those trials which might only partially dispose of the case, and such as might occur afterward, and to allow this right of removal so long as any question yet remained to be tried, in order to the complete disposition of the suit. It will be observed that, in the act of 1866, of which this is amendatory, the words were so transposed, and the application was required to be made "before trial or final hearing;" and their transposition in the present statute was evidently merely casual, not designed to effect, and not effecting, any change whatever in the meaning. The obvious intention of the statute was to require the party desiring to apply for a removal to do so before trial in actions at law, and, what is the same thing, before final hearing in actions in equity. The reason and justice of this, if a removal is to be allowed at all, are apparent. Only the non-resident can apply for it. And it would constitute the very essence of injustice to give him the right to experiment upon the decisions of the state tribunals, obtaining those which, if in his favor, would be binding and conclusive upon the other party, but which, if against himself, he could repudiate, and take his chances again in a new tribunal. The statute did not intend to provide for any such wrong, but, on the contrary, clearly designed to exclude the possibility of it by requiring the application to be made before trial or final hearing. It seems clear, therefore, that whenever in any state court there has been a trial in an action at law, or a final hearing in an action in equity, the result of which was an adjudication which, upon the principles governing judicial decisions, would be final between the parties as to any portion of the merits of the action, the case has passed beyond the stage where it was within either the letter or the spirit of this law.

How was it with this suit in that respect? It was an equitable action, brought in 1860, to foreclose a mortgage in the circuit court of Dane county. The defend

ant, in accordance with the practice prevailing in this state, interposed, by way of defense, certain counterclaims growing out of and connected with the transactions in which the mortgage originated. To these there was a demurrer by the plaintiff, which was overruled, and the order overruling it was affirmed on appeal to this court. Various proceedings were subsequently had, and the case was then brought to final hearing, and a decree rendered in favor of the defendant, dismissing the complaint. That was reversed on appeal to this court, and another final hearing was had, in which the plaintiff obtained a judgment. That was reversed by this court, and the cause remanded for further proceedings, and at that stage of it this application for a removal was made. It will be seen, therefore, that instead of being made before final hearing, it was not made until after there had been two final hearings. And it is no solecism to speak of two final hearings in an equity case any more than it is to speak of two trials in an action at law.

It is material, then, to consider what was the effect of the several decisions of this court in respect to the rights of the parties as to the matters involved in them. No doctrine is better settled here than that the matters decided became *res adjudicatœ;* those decisions became the law of the case, binding upon the parties, binding on the subordinate court, and disposing finally of the questions decided. Whatever further proceedings might be necessary to the ultimate disposition of the case, those questions were no longer open. *Luning v. The State*, 1 Chand. 264; *Parker v. Pomeroy*, 2 Wis. 112; *Downer v. Cross*, id. 371; *Cole et al. v. Clarke*, 3 id. 323; *Jones v. Reed*, 15 id. 40.

If this rule were peculiar to this state, still the decisions of this court would govern as to the effect of our own judicial proceedings between the parties. But the same rule prevails everywhere. And it has been asserted

by the supreme court of the United States quite as strongly as by any other tribunal. In *Martin v. Hunter's Lessee*, 1 Wheat., counsel raised a question as to the propriety of a former decision, the case having already been before the court on a former writ of error. On page 355 the court says: "In the next place, in ordinary cases, a second writ of error has never been supposed to draw in question the propriety of the first judgment, and it is difficult to perceive how such a proceeding could be sustained upon principle. A final judgment of this court is supposed to be conclusive upon the rights which it decides, and no statute has provided any process by which this court can revise its own judgments. In several cases which have been formerly adjudged in this court, the same point was argued by counsel, and expressly overruled. It was solemnly held that a final judgment of this court was conclusive upon the parties, and could not be re-examined." So it was held that the same rule prevailed in equity, and that a second appeal to that court brought up only the propriety of the proceedings in the court below subsequent to the mandate on the first. *Hopkins v. Lee*, 6 Wheat. 113. In *Ex parte Sibbald*, 12 Peters, 492, that court said: "A final decree in chancery is as conclusive as a judgment at law. Both are conclusive of the rights of the parties thereby adjudicated." See also *Bridge Co. v. Stewart*, 3 How. 413; *Roberts v. Cooper*, 20 id. 480. It appears, therefore, that, by the principles universally recognized as applicable to the effect of judicial proceedings, there had been several trials of this case, both in the subordinate and appellate courts of this state, and several judgments by the latter, which, so far as our judicial system is concerned, were final and conclusive between the parties, as to the questions decided.

It is true, those judgments did not finally dispose of the case. But that fact does not at all impeach their finality as to the matters disposed of by them. There

are few important cases but what are carried more than once into the appellate courts. But the fact that the judgments of those courts do not in the first instance completely dispose of the case, has never been supposed to annul their effect entirely, and to place the case, when it got back into the subordinate court, precisely as it would be if there had never been any trial or appeal whatever. On the contrary, as the authorities above referred to fully show, when the case gets back into the inferior court, it carries with it the judgment of the superior, as the established law of the case, and no questions are open to further examination except those which that judgment has left open.

A trial or final hearing consists of the examination and determination both of questions of fact and law. In equity cases, the court may determine both. On appeal, this court may determine both. But the case may have been so presented that we could only properly determine the questions of law, leaving a further trial upon a part or all of the facts necessary for a complete adjustment of the controversy.

This was true in this suit. The struggle in the case was upon the questions of law growing out of the defendant's counterclaims. Those questions were fully considered and finally decided on the last appeal to this court, and the case was remanded for such further trial upon the questions of fact as was necessary to its final determination. And yet, after all these years of litigation, these repeated hearings and judgments both of the subordinate and appellate courts of this state, it is now claimed that this application for a removal was made "before trial or final hearing!"

If such had been the intention of congress, I cannot think it would have stopped where it did. If it would set aside and destroy the effect of repeated trials and judgments, why hesitate before the last one? If it would intervene after all the most important questions

in the case had been tried and passed into judgments binding and conclusive on the parties, why pause before the fact that some question — perhaps a minor and unimportant one — still remained to be tried, in order to a complete disposition of the case? When tried, the judgment concerning it could be no more final, no more binding, than the previous judgments had been, as to the matters involved in them.   Hence, if they were to be overthrown, why not overthrow the whole, and allow the party to remove his case, and try it anew in a court of original jurisdiction, after it was finally and wholly disposed of by the judgment of the state court?   There could be no greater objection to the justice of such a law than there is to it as it now stands, if it is to have the effect contended for.   If the effect of two trials and judgments in all the state courts was to be annulled, there could be no reason why the same thing should not be done as to three or any other number necessary to dispose of the case.

But the act furnishes no evidence of such intention. On the contrary, both its letter and spirit exclude it. The law had formerly allowed only non-resident defendants to apply for a removal.   And they were required to be prompt, and to make their election at the outset, and before taking any steps which could be construed into a voluntary submission to the jurisdiction of the state court.   This act designed to extend the right to non-resident plaintiffs as well.   It designed to extend the time, so that the application might be made at any time before trial or final hearing.   But it did not design to go so far as to allow the party actually to submit his case to the judgment of the state court on the merits, and then, if its judgment should be against him, but should not happen to finally determine the case, to exercise his right of removal.   To induce a court of justice to infer a design to effect such an object, to borrow the language of Chief Justice MARSHALL, "the

intention should be expressed with irresisitble clearness." But here, so far from that being the case, congress has explicitly required that the application shall be made "before final hearing or trial." And the spirit and object of the act unite with its letter in conducting imperatively to the conclusion, that its meaning was to require it to be made before the party had voluntarily submitted his case to any trial or final hearing whatever in the state court.

Nor is this conclusion at all impeached by the rule that has been established by the federal and other courts under statutes authorizing appeals or writs of error from final judgments or decrees. It is generally held there, that the decree or judgment must be one purporting a full and final disposition of the case, and not, on its face, reserving a part of it for future decision by the court. Yet, even in those cases, the rule has not been held with unreasonable strictness, but those decrees which substantially dispose of the merits of the controversy are held final so as to allow an appeal, although some matters essential to a complete execution of the decree are reserved for further examination and decree. Thus, in *Forgay v. Conrad*, 6 How. (U. S.) 201, a decree was passed disposing of the general merits of the action, but directing an account of rents and profits, and reserving that subject for further decree. A motion was made to dismiss on the ground that the decree was not final. The court said: "The question upon the motion to dismiss is, whether this is a final decree, within the meaning of the acts of congress. Undoubtedly, it is not final within the strict technical sense of that term. But this court has not heretofore understood the words 'final decrees' in this strict and technical sense, but has given to them a more liberal, and, as we think, a more reasonable, construction, and one more consonant to the intention of the legislature." See also *Bronson v. Railroad*, 20 How. 524, 531.

But even if, under this class of statutes, it were held that the decree or judgment must be absolutely final to authorize an appeal, no argument could be drawn from it by analogy against the conclusion already arrived at. The difference in the objects of the two statutes would at once furnish an answer. The one is designed to regulate the exercise of an appellate jurisdiction, by which the judgments of an inferior tribunal may be reviewed. It is natural, in such case, to require the inferior court first to dispose, substantially at least, of the whole case, before the appellate power could be invoked. But the object of the other statute was not to provide for a review of the decisions of an inferior tribunal, but for the exercise of an election by a party to a suit in a state court, to transfer it to another court of original jurisdiction, for trial. The design was to authorize an election between the two — not to give him a chance at both. And this object can only be accomplished by requiring, as the statute does, the application to be made before any trial or final hearing in the case. The object of the one statute was to prevent an appeal until every thing had been decided. The object of the other was to authorize a removal only before any thing had been decided.

It seems to me clear, therefore, that this case was not within the act of congress, and that the order for removal was unauthorized. I am aware that the learned judge of the district court of the United States for this district has reached a different conclusion. His opinion upon the subject is published in the April number of the Law Register. Upon this point he says: "If the cause had been finally determined by either judgment of the circuit court, or by the order of the supreme court, then the application for removal would not have been filed before 'the final hearing or trial.' But the last order of the supreme court, reversing the judgment of the circuit court, and remanding the cause to that

court for further proceedings according to law, opened the whole case to litigation, *the same as if no judgment had ever been rendered.* The supreme court, in effect, ordered a *venire facias de novo,* which required the circuit court to hear the cause as if no hearing or trial had taken place."

If this is so, then this court has been laboring under a great delusion. If after a case has been three times in this court, twice on appeal from final judgments in the court below; if, after the essential vital legal questions upon which its decision depends have been solemnly adjudicated by this court, and the cause remanded to the circuit, it starts there anew, with nothing settled, "the whole case opened to litigation as if no judgment had ever been rendered," then are not only our labors fruitless indeed, but those of the unfortunate litigants in the state courts are vainer than the labors of Sysiphus.

We have not so understood the law. We have uniformly applied to our decisions, so far as relates to matters within our jurisdiction, the same rule which the supreme court of the United States applies to its decisions; and have held that they become the law of the case, binding on the parties and the subordinate courts, and that the questions decided are not open to further litigation. We cannot have erred in this, unless the decisions of this court constitute an exception to the rule by which those of all other courts are governed.

I cannot but regret that this difference of opinion has arisen between this court and the learned judge of the district court. It may be the cause of much embarrassment and expense to the parties. But, inasmuch as the difference does exist, I know of no way to avoid its consequences, whatever they may be. There seems but one course open to this court, consistent with its duty to itself and to the state, where its appellate power is invoked in the regular course of judicial pro-

ceedings ; and that is, to exercise the jurisdiction which it believes itself to possess, according to its best judgment, whether that be well or ill founded.

As the conclusion already arrived at makes it unnecessary, I shall not enter upon the question whether it is competent for congress to authorize a non-resident plaintiff, who has voluntarily brought his suit in the state court, to obtain a removal. I will only say that there is a marked difference between such a law and that which has heretofore been in force. The appellate jurisdiction of the United States supreme court over the state courts has been sustained by the decisions of that court, and generally acquiesced in. And the validity of the twelfth section of the judiciary act, authorizing a non-resident defendant sued in a state court to have the case removed for trial to the federal courts, has also been sustained, as an alleged branch of the appellate power. But the argument by which a proceeding, apparently so incongruous as one by which the courts of original jurisdiction in one judicial system wrench a case bodily from the courts of original jurisdiction of another distinct judicial system, created and organized under another constitution of government, is attempted to be sustained, is not that there is any express provision in the constitution of the United States to that effect, but that the proceeding is necessary in order to give effect to the general grants of judicial power which it contains. It is said that as questions may arise concerning the constitution and laws of the United States, in suits pending in the state courts, and as citizens of other states may be sued as defendants in those courts, and as the judicial power of the United States extends to such controversies, unless there is a right of appeal and of removal, there is no way in which that judicial power can reach such cases. The argument rests, therefore, almost entirely on the assumed necessity of such right, in order to give effect to the grants of judicial power. Powerful

arguments have certainly been made against the exist-
ence of the right in any case.  These have been drawn
from the acknowledged independence and sovereignty
of the state and federal governments, each within its
own sphere, which doctrine has often been asserted by
the supreme court of the United States.  They have
expressly told us that this separation of the two gov-
ernments is so complete that congress can vest no part
of the judicial power of the United States in any state
court, and can impose no duty whatever on any state
officer.  In view of these conclusions, it is certainly
difficult to show, by any satisfactory reasoning, by what
authority congress can authorize a federal court to ac-
quire original jurisdiction through the process and pro-
ceedings of a state court.  These considerations, joined
with the fact that, by the ordinary rules of interpreta-
tion, the general grants of judicial power, original and
appellate, in the constitution of the United States, would,
in the absence of any professed intention on its face to
regulate any other judicial system, be held to relate
solely to the judicial system established by itself, have
led many able minds to deny the existence of any
power whatever to transfer a case, by appeal or other-
wise, from a state to a federal court.  But against these
arguments the power has been upheld, as already re-
marked, upon the ground of its absolute necessity in
order to give effect to the grants of judicial power.
But, if the power rests upon that ground, the necessity
which gives it birth would seem to constitute its limit.
And, in respect to a non-resident plaintiff, who volun-
tarily brings his suit in a state court, that necessity
fails entirely.  A right of removal is not necessary
there to enable the judicial power of the United States
to reach the case ; because he might have brought the
suit in the federal court in the first instance.  The con-
stitutional grant had full effect from the outset, and the
party in whose behalf the right to have the case tried

in the federal court is claimed, had it fully provided for him.   Whether, after he voluntarily waived it, and sued in the state court, there is any power to provide for a removal of the suit in his favor, is certainly a different question from any that has yet been decided by the supreme court of the United States.   There is at least some ground for denying the power in such a case, without impeaching the right of appeal and removal so far as they have already been sustained.   Whether, upon full examination, this ground would be found sufficient, I shall not attempt further to inquire.   But I will say that, if this act is to have the effect claimed for it — if, after a non-resident has pursued a citizen of this state through years of expensive litigation in the state courts — if, after all the important and vital questions in the case have passed into judgment, as between the parties, and he sees his antagonists about to pluck the fruits of his toil and sacrifice — he can, by an affidavit under this statute, turn those fruits to ashes, and transfer his case to another court of original jurisdiction to start anew, certainly such results will challenge for the act the closest scrutiny of the grounds upon which the power to pass it is asserted.

*By the Court.* — The order appealed from is reversed, and the cause remanded for further proceedings.