AKEN, (WARBURTON v.)

[See Warburton v. Aken, Case No. 17,143.]

## Case No. 119.

### AKERLY v. VILAS.

[1 Abb. U. S. 284;[1] 2 Biss. 110;[1] 1 Chi. Leg. News, 161; 8 Amer. Law Reg. (N. S.) 229.]

Circuit Court, Seventh Circuit, D. Wisconsin. Feb. Term, 1869.

REMOVAL OF CAUSES—TIME OF MAKING APPLICATION.

1. A state court has no power to entertain an appeal or other proceeding to review an order made in such court granting a petition to remove a cause from the state court to a court of the United States: nor can the state court withhold or delay the transfer of the record from its clerk's office to the United States court pending any such review.

2. An application in a state court for the removal of a cause to a United States court, made after trial and judgment in a state court of original jurisdiction, and judgment of a state court of appellate jurisdiction, which in effect reverses the judgment below and orders a new trial or hearing, is in season, where the application is made under the act of March 2, 1867, (14 Stat. 558,)—which authorizes the petition to be filed at any time "before the final hearing or trial" of the suit. The reversal and order for a new trial or hearing open the case to litigation the same as if no judgment had ever been rendered.

[3. Cited in Kellogg v. Hughes, Case No. 7,662; McCallon v. Waterman, Id. 8,675. Questioned in Hancock v. Holbrook, 27 Fed. Rep. 402, as to the point that it is not necessary that the plaintiff or defendant, consisting of more than one party, should be collectively so situated as to authorize a removal.]

This was a motion by the plaintiff, a citizen of the state of New York, for an order allowing him to file in this court copies of the process, pleadings, depositions, testimony and other proceedings in this cause, the clerk of the state court from which removal was sought having refused to make and certify such copies. This case had been pending in the circuit court of Dane county, which on

[1][Reported by Josiah H. Bissell, Esq., and also by Benjamin Vaughan Abbott, Esq., and here compiled and reprinted with permission. The syllabus is from 1 Abb. U. S. 284, and the statement from 2 Biss. 110.]

the 28th of October, 1869, had on petition and papers filed by the plaintiff required the defendant to show cause why the case should not be removed to the circuit court of the United States. On the 8th of November the following order was entered: "And the court having heard the counsel of the parties, and being sufficiently advised therein, ordered and declared that in this action now pending in this court there is a controversy between Jay Camiah Akerly, the plaintiff, a citizen of the state of New York, and Levi B. Vilas, one of the defendants, a citizen of the state of Wisconsin; that the matter in dispute exceeds the sum of five hundred dollars, exclusive of costs; that the plaintiff has made and filed in this court an affidavit as required by the act of congress, approved March 2, 1867, and in all other respects complied with said act. And it is further ordered, that this court doth accept the surety offered by the plaintiff, and that all proceedings in said cause be and they are hereby stayed, and this cause is hereby removed into the circuit court of the United States, in and for the district of Wisconsin." On the 26th day of December, 1868, application was made by the plaintiff to the clerk of the circuit court of Dane county for a certified copy of the record and proceedings in this case, for the purpose of transferring it to this court, according to the order of that court, and the bond of the plaintiff, according to law, and the fees of the clerk for making and certifying a copy were tendered, which he refused to accept; he also refused to furnish the copies demanded, stating that he was bound to obey an order of the Dane county circuit court, prohibiting him from making such copies. The state court, in addition to the order of removal, had made an order allowing an appeal from said order of removal to the state supreme court, and enjoining its clerk from furnishing copies and proceedings pending said appeal. [In its various phases, the case is also reported in 15 Wis. 401; 21 Wis. 88, 382; 23 Wis. 207, 628; 24 Wis. 165; 25 Wis. Append. A. 703.]

Finches, Lynde & Miller, for complainant.
Spooner & Vilas, for defendants.

MILLER, District Judge. This motion is made under the act of March 2, 1833, § 4, (4 Stat. 634,) which enacts that "in any case in which any party is, or may be, by law entitled to copies of the records and proceedings in any suit or prosecution in any state court to be used in any court of the United States, if the clerk of said court shall upon demand, and the payment or tender of the legal fees, refuse or neglect to deliver to such party certified copies of such record and proceedings, the court of the United States in which such record and proceedings may be needed, on proof by affidavit, that the clerk of such court has refused or neglected to deliver copies thereof on demand as afore-

said, may direct and allow such record to be supplied by affidavit or otherwise, as the circumstances of the case may require or allow, and thereupon such proceeding, trial and judgment may be had in the said court of the United States, and all such process awarded, as if certified copies of such records and proceedings had been regularly before the said court." The conditions of removal of causes from a court of the state to a court of the United States, according to the act approved March 2, 1867, (14 Stat. 558,) are that where a suit is pending in the state court at the time of the application for removal, in which there is a controversy between a citizen of the state in which the suit is brought, and a citizen of another state. and the matter in dispute exceeds the sum of five hundred dollars, exclusive of costs, such citizen of another state, whether he be plaintiff or defendant, if he shall make and file in such court an affidavit stating that he has reason to, and does believe that, from prejudice or local influence, he will not be able to obtain justice in such state court, may, at any time before the final hearing or trial of the suit, file a petition in such state court for the removal of the suit into the next circuit court of the United States, to be held in the district where the suit is pending, and offer good and sufficient surety for his entering in such court on the first day of its session copies of all process, pleadings, depositions, testimony and other proceedings, &c. And it shall be thereupon the duty of the state court to accept the surety, and proceed no further in the suit.

The circuit court of Dane county was satisfied that all the requirements of the act were complied with by plaintiff, and on inspection of the record found that there had not been a final trial or hearing of the suit. The court then accepted the surety offered, and ordered that all proceedings in the suit be stayed. In section 12 of the act of 1789 (1 Stat. 73) is the same provision in respect to the surety upon an application for the removal of causes from state to United States courts, "that it shall be the duty of the state court to accept the surety and proceed no further in the cause." The supreme court of the United States in Gordon v. Longest, 16 Pet. [41 U. S.] 97, decided that when the application for the removal of a cause is in proper form, and the facts on which the application is founded are made to appear according to the requirement of the act, the party is entitled to a right to have the cause removed under the law of the United States, and the judge of the state court has no discretion to withhold the right. And when, on application for the removal, it is shown that the case is one embraced by the act, and that the party has complied with the required conditions, it is the duty of the state court to proceed no further in the cause, and every step further taken in the case, whether in the same court or in an appellate court, is coram non judice

and, of course, nugatory. See, also, Kanouse v. Martin, 15 How. [56 U. S.] 198. Submitting to the authority of the act of congress, and of the decisions of the supreme court of the United States, I have no other discretion than to decide that the clerk of the circuit court of Dane county was not justified in withholding the transcript from the plaintiff, either under the prohibition of the court, or by reason of the appeal after acceptance of the surety, and the order of removal of the cause to this court.

I will dispose of the remaining positions of the defendant's counsel as if upon a motion to remand the cause to the Dane circuit court.

It is objected that all the defendants are not citizens of the state of Wisconsin. Levi B. Vilas and Esther G. Vilas, his wife, are the principal party defendants. They are the parties to the mortgage in suit. It is alleged that Martin T. Vilas, one of the defendants, is a citizen of the state of Vermont, and is the owner of the equity of redemption of the mortgaged premises. Thomas Reynolds and Leonard J. Farwell, the remaining defendants, are citizens of this state. It is set out in the petition for removal that the persons named as defendants, except Levi B. Vilas and wife, have been either personally served with process issued in the cause, or have voluntarily entered their appearance, and that all the defendants except Levi B. Vilas have, by the rules and practice of the court, confessed and admitted the plaintiff's cause of action, by not answering the complaint of plaintiff, as required by law and rules and practice of the court. The state court finds that in this action now pending there is a controversy between Jay Camiah Akerly, plaintiff, and Levi B. Vilas, one of the defendants. From this it would seem that the allegation of the petition that the complainant[2] had been taken as confessed against all the defendants except Levi B. Vilas, is correct. The service and appearance of those defendants may possibly require them to appear and answer a new bill to be brought in this court, or, in default of an answer, to let the bill be taken as confessed against them. But whether such be the practice, or not, I need not now determine. At the final hearing a question may be raised whether a decree can be made irrespective of these defendants. At present they do not appear to be necessary parties. See Wood v. Davis, 18 How. [59 U. S.] 467.

Another objection to the removal of the cause to this court is, that the application was not made "before the final hearing or trial in the state court."

It appears from a report of the case in 21 Wis. 88, that the suit is for foreclosure of a mortgage given by Levi B. Vilas and wife, to secure the payment of certain bonds. That the cause came on to be heard between the plaintiff and Vilas, the defendant, and a decree was rendered against the plaintiff, the court holding that the bonds and mortgage were invalid, from which decree the plaintiff appealed to the supreme court. And the defendant also appealed for alleged error of the court in striking out his counter-claims, and rejecting evidence in support of them. The supreme court decided that the bonds and mortgage were valid, and that one of the counter-claims was improperly stricken out, and reversed the judgment of the circuit court on both appeals. The cause came on a second time to be tried before the circuit court, when a decree was rendered in favor of plaintiff, from which defendant Vilas appealed upon the ground of the rejection by the court of a certain counter-claim set up in his answer. The supreme court reversed that judgment or decree, and remanded the cause to the Dane circuit court for further proceedings according to law. If the cause had been finally determined by either judgment of the circuit court, or by order of the supreme court, then the application for removal would not have been filed before "the final hearing or trial." But the last order of the supreme court, reversing the judgment of the circuit court, and remanding the cause to that court for further proceedings according to law, opened the whole case to litigation, the same as if no judgment had ever been rendered. The supreme court in effect ordered a venire facias de novo, which required the circuit court to hear the cause as if no hearing or trial had taken place. The whole proceedings were in fieri when the petition for removal was presented to the circuit court. I am, therefore, of the opinion that the petition was presented before the final hearing or trial of the cause.

The motion of plaintiff is granted.

NOTE. [from original report in 2 Biss. 110.] At the September term of the U. S. circuit court, present, Justice Davis and District Judge Miller, a motion of defendants for an order rescinding the above order was denied.

The opinion of the supreme court of Wisconsin in this case will be found in 24 Wis. 165.

That the state court has no discretion, a proper petition being filed. Matthews v. Lyall, [Case No. 9,285;] Fisk v. Union Pac. R. Co., [Id. 4,827.] And no action of the state court can affect the right. Hatch v. Chicago, R. I. & P. R. Co., [Id. 6,204.] After judgment rendered in the state court and exceptions have been overruled in the appellate state court, the case cannot, pending a motion for a new trial on the ground of excessive damages, be removed into the federal court. Bryant v. Rich, 106 Mass. 180. Consult also Kingsburg v. Kingsbury, June, 1871, to appear in a subsequent volume of these Reports, [Case No. 7,817,] where it is held that where the decree of the court below was reversed by the supreme court of the state with instructions to dismiss the suit, an application for removal came too late; that it was not the intention of congress that a party dissatisfied with the rulings of the state courts might have a rehearing in the federal courts. Where in a proper case the necessary steps are taken for removal, the state court has no further jurisdiction, and any subsequent steps are coram-

---

[2] [2 Biss. 114, gives "complaint."]

non judice and void. Bell v. Dix, 49 N. Y. 232. For proper practice where the plaintiff persists in proceeding in state court consult Id. Where the defendant, a citizen of another state, regularly files his petition and bond in the state court, in accordance with the provisions of the judiciary act, for the removal of the cause to the U. S. circuit court, the state court is ipso facto ousted of jurisdiction. Any further proceedings are coram non judice and void. Stevens v. Phoenix Ins. Co., 41 N. Y. 149.

NOTE, [from original report in 1 Abb. U. S. 284.] Subsequent to this decision, the appeal was moved, on behalf of the plaintiff, in the supreme court of the state, and a decision rendered reaching the general results that the order of removal was reviewable on appeal in the state court, and that it was improperly made and should be reversed. We give so much of the opinion in the state court as relates to these two points:

PAINE, J. The application for removal was made by the plaintiff under the act of congress of March 2, 1867, and the appellant claims that the order was erroneous upon two grounds: 1st. That the case was not within the act; 2nd. That if it were within it, the act itself, so far as it professes to authorize a nonresident plaintiff who had commenced his suit in the state court to obtain removal, is invalid.

The respondent's counsel have declined to argue either of these questions, but have contented themselves with simply submitting and briefly discussing the proposition that this court has no jurisdiction to hear and determine this appeal. Of course, this question must be determined upon the hypothesis that it is possible that the case may not have been within the act of congress, and that even if within it, the act may have been invalid. Counsel assume this possibility, for they say that the appellant's remedy "(if indeed he has any) is to apply to the federal court to remand the case to the state court." In support of the position they refer to two classes of authorities. But these wholly fail to sustain it, and in truth warrant directly the opposite conclusion. And it would seem impossible to have drawn any such inference from them, except by confounding the distinction between the two classes, and applying the doctrines of both indiscriminately to each. Thus they first refer to several cases, holding that where a proper application for a removal is made, in a case where the party is entitled to a removal by law, the jurisdiction of the state court ceases, and every subsequent step, except that of sending the case away, is coram non judice and void. They next cite another class, holding that where the order of removal was improperly made, in a case where the party was not entitled to it, an application may be made to the federal court to dismiss it for want of jurisdiction, and they then seek to transfer to the latter class of cases the doctrines of the former, and to hold that the jurisdiction of the state court ceases, and every step subsequent to the application for removal is equally as unauthorized and void in those cases where the order of removal is improper and the party not entitled to it by law, as in the others. Such a conclusion is in conflict with both classes of cases. Both proceed upon the express assumption that it is only when the removal is authorized by law, and the application properly made, that the jurisdiction of the state court is divested and that of the federal court attaches. Both proceed upon the assumption that where this is not the case, the jurisdiction of the state court remains, and the federal court acquires none whatever. And yet we are now asked to hold, that although this case may have been one of the latter class—though it

may be one in which there was no law authorizing a removal, and in which, consequently, the federal court acquired no jurisdiction, yet that by some unaccountable process the state court lost it, so that between the two the jurisdiction has lapsed entirely. Such a conclusion would be extraordinary indeed, and it has as little support in authority as it has in reason.

If there was no law authorizing the removal, and there was none if either of the positions taken by the appellant is true, then the jurisdiction of the state court remained unimpaired, and there was no obstacle in the way of its exercise, except the erroneous order that the case be removed. And the idea that the appellate power of the state court cannot be invoked to correct this error—that it remains in abeyance, suspended by such an unauthorized application, that the court which has jurisdiction must decline to exercise it, until the court that has none shall see fit to disclaim it—is one that cannot be supported upon any reasoning. But if the right to appeal exists in a case where the removal is unauthorized, then it must also exist even when the order of removal is proper. The question whether the court has power to hear and determine the appeal, cannot depend upon the conclusion to which it may come on the merits of the order to be reviewed. Nothing is better settled in legal practice, than that an order by which a subordinate court dismisses a case for want of jurisdiction, or in any way divests itself of jurisdiction, is subject to review on appeal. It is within the express provision of our statute that allows an appeal from any order which prevents a judgment from which an appeal might be taken. It is the common practice of all courts. The case of Mayor v. Cooper, 6 Wall. [73 U. S.] 247, cited by the respondent, is one where the supreme court of the United States reviewed such an order, made by the United States circuit court. It is true in that case the order or judgment of dismissal was reversed, the court holding that the circuit court had jurisdiction. But if they had held differently, they would have affirmed the order, and not have dismissed the writ of error. This is the invariable practice. And this shows that the exercise of the power to hear and determine an appeal from an order by which a subordinate court attempts to divest itself of jurisdiction, is not an assertion of jurisdiction in the case subsequent to and in defiance of the application for removal. It is merely the decision upon that application itself. And that decision, whether the power be exercised by a subordinate or appellate court, is not the exercise of jurisdiction in the case. It is the determination of an independent preliminary question, and one which every court, from the necessity of the case, has the power to determine whenever presented. And whoever invokes the exercise of this power on the part of a subordinate tribunal of the state, must invoke it subject to all the conditions imposed upon that tribunal by the law of its existence; and one of those conditions is that an order made upon such an application is appealable.

That the power to hear and determine an appeal from such an order is entirely independent of the question of jurisdiction to proceed upon the merits of the action, the case of Nelson v. Leland, 22 How. [63 U. S.] 48, is an express authority. A motion was there made to dismiss the appeal on the ground of a want of jurisdiction originally in the subordinate court, and the chief justice delivered the opinion of the court, "that the question of jurisdiction in the lower court is a proper one for appeal to this court, and for argument when the case is regularly reached, and that this court have jurisdiction on such appeal." The motion was therefore denied, and upon the express ground that their jurisdiction of the appeal

was wholly independent of the actual jurisdiction of the lower court, to try the action upon its merits. And if this is so, the exercise of this appellate power is not the exercise of that jurisdiction of which it is claimed the state court is divested by the presentation of a proper application for removal. It is true that if the appellate court should sustain the jurisdiction of the state tribunals, they might proceed subsequently to attempt to exercise it. But the mere determination of the question whether such jurisdiction had ceased or continued is not an exercise of it, any more when made by the appellate than it was when made by the subordinate court. Indeed, the right and the duty of the state courts to exercise such appellate power has been expressly decided by the supreme court of the United States in Kanouse v. Martin, 15 How. [56 U. S.] 198. The court of common pleas in the city of New York had denied an application for removal, and afterwards proceeded to try the action on the merits, and rendered judgment. It was taken by appeal to the superior court, which affirmed the judgment. And the supreme court of the United States reversed that judgment, not on the ground that the superior court erred in taking jurisdiction of the appeal, but in neglecting to reverse the judgment of the common pleas for refusing the application for a removal. They say: "The error of the superior court was, therefore, an error occurring in the exercise of its jurisdiction, by not giving due effect to the act of congress under which the plaintiff in error claimed," &c. And it made an order remanding the case to the superior court, with directions for further proceedings in conformity to the opinion. And such further proceedings would consist wholly of an exercise of the appellate power of the superior court to reverse the judgment of the common pleas. And yet we are referred to this case by the respondent's counsel to support their assertion, that this court will "stulfify itself by taking jurisdiction of this appeal."

This court certainly is not oblivious of the fact, that if it should hold that a removal of this suit was unauthorized, and should subsequently proceed to render final judgment after such further trial as may be necessary, the supreme court of the United States may assert its appellate jurisdiction over that judgment, may reverse it, and remand the case with directions similar to those in Kanouse v. Martin, as counsel suggest. But we feel very confident that if it should do so, it will not be because this court erred in assuming jurisdiction of the appeal, but because it will think this court erred in holding the plaintiff not entitled to a removal.

I have thus endeavored to state the distinction between the exercise of the power to decide upon the application for a removal, whether by the subordinate or appellate court, and the exercise of jurisdiction over the merits of the action, for the purpose of showing that the broad language used by the court in Gordon v. Longest, 16 Pet. [41 U. S.] 104, cannot in any event be applicable to the exercise of such appellate power. But it is perhaps doubtful whether the same language would be now used by that court. The subsequent case of Kanouse v. Martin seems studiously to avoid it, and makes no suggestion that the judgment of the court of common pleas, and of the superior court were void for want of jurisdiction, but speaks of them throughout the opinion as merely "erroneous." And the same view is also supported by the case of Hadley v. Dunlap, 10 Ohio St. 1. I come, therefore, to the conclusion that this order is appealable, and that it is a duty of this court from which it cannot shrink, to proceed to a determination of the questions presented.

Was the case within the provisions of the act of congress? The act provides that the non-resident party to a suit in a state court, be-tween a citizen of that state and a citizen of another state, shall be entitled to a removal, on making the proper application, "at any time before the final hearing or trial of the suit." The question arises upon this language, Was the application here made "before the final hearing or trial," in accordance with its intent and meaning?

What was its intent? I think it will not be claimed that the word "final," as used in this provision, applies to or qualifies the word "trial." The word "hearing" has an established meaning as applicable to equity cases. It means the same thing in those cases that the word "trial" does in cases at law; and the words "final hearing" have long been used to designate the trial of an equity case upon the merits, as distinguished from the hearing of any preliminary questions arising in the cause, and which are termed interlocutory. This use and meaning of the words are too well established and too familiar to require reference. I assume, therefore, that the meaning of the statute is the same as though these words were transposed, and it provided that the application might be made at any time "before trial or final hearing," and that no implication can be raised by attempting to apply the word "final" to the word "trial;" that congress intended to distinguish between those trials which might only partially dispose of the case, and such as might occur afterwards, and to allow this right of removal so long as any question yet remained to be tried, in order to the complete disposition of the suit. It will be observed that in the act of 1866, of which this is amendatory, the words were so transposed, and the application was required to be made "before trial or final hearing;" and their transposition in the present statute was evidently merely casual, not designed to effect, and not effecting any change whatever in their meaning. The obvious intention of the statute was to require the party desiring to apply for a removal to do so before trial in actions at law, and, what is the same thing, before final hearing in actions in equity. The reason and justice of this, if a removal is to be allowed at all, are apparent. Only the non-resident can apply for it. And it would constitute the very essence of injustice to give him the right to experiment upon the decisions of the state tribunals, obtaining those which if in his favor would be binding and conclusive upon the other party, but which if against himself, he could repudiate and take his chances again in a new tribunal. The statute did not intend to provide for any such wrong, but on the contrary clearly designed to exclude the possibility of it, by requiring the application to be made before trial or final hearing. It seems clear,therefore, that whenever in any state court there has been a trial in an action at law, or a final hearing in an action in equity, the result of which was an adjudication, which upon the principles governing judicial decisions would be final between the parties, as to any portion of the merits of the action, the case has passed beyond the stage when it was within either the letter or the spirit of the law. How was it with this suit in that respect? It was an equitable action, brought in 1860, to foreclose a mortgage in the circuit court of Dane county. The defendant, in accordance with the practice prevailing in this state, interposed by way of defense certain counter-claims, growing out of and connected with the transactions in which the mortgage originated. To these there was a demurrer by the plaintiff, which was overruled, and the order overruling it was affirmed on appeal to this court. Various proceedings were subsequently had, and the case was then brought to final hearing, and a decree rendered in favor of the defendant, dismissing the complaint. That was reversed on appeal to this court, and another final hearing was had, in which the plaintiff obtained a judgment. That was reversed by

this court, and the cause remanded for further proceedings; and at that stage of it this application for a removal was made. It will be seen, therefore, that instead of being made before final hearing, it was not made until after there had been two final hearings. And it is no solecism to speak of two final hearings in an equity case, any more than it is to speak of two trials in an action at law.

It is material, then, to consider what was the effect of the several decisions of this court in respect to the rights of the parties as to the matters involved in them. No doctrine is better settled here than that the matters decided become res adjudicata; those decisions became the law of the case, binding upon the parties, binding on the subordinate court, and disposing finally of the questions decided. Whatever further proceedings might be necessary to the ultimate disposition of the case, those questions were no longer open. Luning v. State, 1 Chand. 264; Parker v. Pomeroy, 2 Wis. 112; Downer v. Cross, Id. 371; Cole v. Clarke, 3 Wis. 323; Reed v. Jones, 15 Wis. 40. If this rule were peculiar to this state, still the decisions of this court would govern, as to the effect of our own judicial proceedings between the parties. But the same rule prevails everywhere; and it has been asserted by the supreme court of the United States quite as strongly as by any other tribunal. In Martin v. Hunter, 1 Wheat. [14 U. S.] 304, counsel raised a question as to the propriety of a former decision, the case having already been before the court on a former writ of error. On page 355, the court say: "In the next place, in ordinary cases, a second writ of error has never been supposed to draw in question the propriety of the first judgment, and it is difficult to perceive how such a proceeding could be sustained upon principle. A final judgment of this court is supposed to be conclusive upon the rights which it decides, and no statute has provided any process by which this court can revise its own judgments. In several cases which have been formally adjudged in this court, the same point was argued by counsel and expressly overruled. It was solemnly held that a final judgment of this court was conclusive upon the parties, and could not be re-examined." So it was held that the same rule prevailed in equity, and that a second appeal to that court brought up only the propriety of the proceedings in the court below, subsequent to the mandate on the first. Hopkins v. Lee, 6 Wheat. [19 U. S.] 109. In Ex parte Sibbald, 12 Pet. [37 U. S.] 492, that court said, "a final decree in chancery is as conclusive as a judgment at law. Both are conclusive of the rights of the parties thereby adjudicated." See, also, Bridge Co. v. Stewart, 3 How. [44 U. S.] 413; Roberts v. Cooper, 20 How. [61 U. S.] 467. It appears, therefore, that by the principles universally recognized as applicable to the effect of judicial proceedings, there had been several trials of this case, both in the subordinate and appellate courts of this state, and several judgments by the latter, which, so far as our judicial system is concerned, were final and conclusive between the parties, as to the questions decided.

It is true, those judgments did not finally dispose of the case. But that fact does not at all impeach their finality as to the matters disposed of by them. There are few important cases but what are carried more than once into the appellate courts. But the fact that the judgments of those courts do not in the first instance completely dispose of the case, has never been supposed to annul their effect entirely, and to place the case, when it got back into the subordinate court, precisely as it would be if there had never been any trial or appeal whatever. On the contrary, as the authorities above referred to fully show, when the case gets back into the inferior court it carries with it the judgment of the superior as the established law of the case, and no questions

are open to further examination except those which that judgment has left open.

A trial or final hearing consists of the examination and determination both of questions of law and fact. In equity cases the court may determine both. On appeal this court may determine both. But the case may have been so presented that we could only properly determine the questions of law, leaving a further trial upon a part or all of the facts necessary for a complete adjustment of the controversy. This was true in this suit. The struggle in the case was upon the questions of law growing out of the defendant's counter-claims. Those questions were fully considered, and finally decided on the last appeal to this court; and the case was remanded for such further trial upon the questions of fact, as was necessary to its final determination. And yet after all these years of litigation, these repeated hearings and judgments, both of the subordinate and appellate courts of this state, it is now claimed that this application for a removal was made, "before trial or final hearing." Such had been the intention of congress, I cannot think it would have stopped where it did. If it would set aside and destroy the effect of repeated trials and judgments, why hesitate before the last one? If it would intervene after all the most important questions in the case had been tried and passed into judgments, binding and conclusive on the parties, why pause before the fact that some question, perhaps a minor and unimportant one, still remained to be tried, in order to a complete disposition of the case? When tried, the judgment concerning it could be no more final, no more binding, than the previous judgments had been as to matters involved in them. Hence, if they were to be overthrown, why not overthrow the whole, and allow the party to remove his case, and try it anew in a court of original jurisdiction, after it was finally and wholly disposed of by the judgment of the state court? There could be no greater objection to the justice of such a law than there is to it as it now stands, if it is to have the effect contended for. If the effect of two trials and judgments in all the state courts was to be annulled, there could be no reason why the same thing should not be done as to three or any other number necessary to dispose of the case.

But the act furnishes no evidence of such intention. On the contrary, both its letter and spirit exclude it. The law had formerly allowed only non-resident defendants to apply for a removal. And they were required to be prompt, and to make their election at the outset, and before taking any steps which could be construed into a voluntary submission to the jurisdiction of the state court. This act designed to extend the right to non-resident plaintiffs as well. It designed to extend the time, so that the application might be made at any time before trial or final hearing. But it did not design to go so far as to allow the party actually to submit his case to the judgment of the state court on the merits, and then, if its judgment should be against him, but should not happen to finally determine the case, to exercise his right of removal. To induce a court of justice to infer a design to effect such an object, to borrow the language of Chief Justice Marshall, "the intention should be expressed with irresistible clearness." But here, so far from that being the case, congress has explicitly required that the application shall be made "before final hearing or trial." And the spirit and object of the act unite with its letter, in conducting imperatively to the conclusion that its meaning was to require it to be made before the party had voluntarily submitted his case to any trial or final hearing whatever in the state court.

Nor is this conclusion at all impeached by the rule that has been established by the federal and other courts, under statutes authoriz-

ing appeals or writs of error from final judgments or decrees. It is generally held there, that the decree or judgment must be one purporting a full and final disposition of the case, and not on its face reserving a part of it for future decision by the court; yet, even in those cases, the rule has not been held with unreasonable strictness, but those decrees which substantially dispose of the merits of the controversy are held final so as to allow an appeal, although some matters essential to a complete execution of the decree are reserved for further examination and decree. Thus, in Forgay v. Conrad, 6 How. [47 U. S.] 201, a decree was passed disposing of the general merits of the action, but directing an account of rents and profits, and reserving that subject for further decree. A motion was made to dismiss, on the ground that the decree was not final. The court said: "The question upon the motion to dismiss is, whether this is a final decree within the meaning of the acts of congress. Undoubtedly it is not final within the strict technical sense of that term. But this court has not heretofore understood the words 'final decrees' in this strict and technical sense, but has given to them a more liberal, and, as we think, a more reasonable construction, and one more consonant to the intention of the legislature." See, also, Bronson v. Railroad, 2 Black, [67 U. S.] 524, 531. But even if, under this class of statutes, it were held that the decree or judgment must be absolutely final to authorize an appeal, no argument could be drawn from it by analogy against the conclusion already arrived at. The difference in the objects of the two statutes would at once furnish an answer. The one is designed to regulate the exercise of an appellate jurisdiction, by which the judgments of an inferior tribunal may be reviewed. It is natural in such case to require the inferior court first to dispose, substantially at least, of the whole case, before the appellate power could be invoked. But the object of the other statute was not to provide for a review of the decisions of an inferior tribunal, but for the exercise of an election by a party to a suit in a state court, to transfer it to another court of original jurisdiction for trial. The design was to authorize an election between the two; not to give him a chance at both. And this object can only be accomplished by requiring, as the statute does, the application to be made before any trial or final hearing in the case. The object of the one statute was to prevent an appeal until everything had been decided. The object of the other was to authorize a removal only before anything had been decided.

It seems to me clear, therefore, that this case was not within the act of congress, and that the order for removal was unauthorized. I am aware that the learned judge of the district court of the United States for this district has reached a different conclusion. His opinion upon the subject is published in the American Law Register for April, 1869. Upon this point he says: "If the cause had been finally determined by either judgment of the circuit court, or by order of the supreme court, then the application for removal would not have been filed before 'the final hearing or trial.' But the last order of the supreme court reversing the judgment of the circuit court, and remanding the cause to that court for further proceedings according to law, opened the whole case to litigation, the same as if no judgment had ever been rendered. The supreme court in effect ordered a venire facias de novo, which required the circuit court to hear the cause as if no hearing or trial had taken place." If this is so, then this court has been laboring under a great delusion. If, after a case has been three times in this court, twice on appeal from final judgments in the court below, if after the essential vital legal questions upon which its de-

cision depends have been solemnly adjudicated by this court, and the cause remanded to the circuit, it starts there anew with nothing settled, "the whole case opened to litigation, as if no judgment had ever been rendered," then are not only our labors fruitless indeed, but those of the unfortunate litigants in the state courts are vainer than the labors of Sisyphus. We have not so understood the law. We have uniformly applied to our decisions, so far as relates to matters within our jurisdiction, the same rule which the supreme court of the United States applies to its decisions; and have held that they become the law of the case, binding on the parties and the subordinate courts, and that the questions decided are not open to further litigation. We cannot have erred in this, unless the decisions of this court constitute an exception to the rule by which those of all other courts are governed.

I cannot but regret that this difference of opinion has arisen between this court and the learned judge of the district court. It may be the cause of much embarrassment and expense to the parties. But inasmuch as the difference does exist, I know of no way to avoid its consequences, whatever they may be. There seems but one course open to this court, consistent with its duty to itself and to the state, when its appellate power is invoked in the regular course of judicial proceedings, and that is, to exercise the jurisdiction which it believes itself to possess, according to its best judgment, whether that be well or ill founded.

The remainder of the opinion relates to the question whether it is competent for congress to authorize a non-resident plaintiff, who has voluntarily brought his suit in the state court, to obtain a removal.

[Akerly v. Vilas, 24 Wis. 165.]